Chief Justice Robertson
delivered the Opinion-of the Court.
This is an action of assumpsit, instituted by Náthaniel Poyntz against James N. Morrison, to recover one third of a debt or debts which Poyntz had paid, as a co-surety with Morrison and one Payne, for Robert I. Langhorne.
The recovery was resisted on the ground that Lapg-horne had mortgaged to Poyntz and Payne, property worth about thirty thousand dollars, for indemnifying them as co-sureties of Morrison, and for other liabilities, amounting altogether to rather more than thirty thousand dollars; and that Poyntz had neither proceeded to foreclose the mortgage, nor otherwise to dispose of the-mortgaged property, nor proved, in any way, that Lang-horne was, as to the sum claimed in this suit, either partially or totally insolvent.
But the Circuit Judge, not considering that defence sufficient, gave instructions to the jury which eventuated in a verdict and judgment against Morrison, for the amount sought to be recovered.
We cannot concur with the Circuit Court.
Assumpsit for money paid by a surety, is a modern remedy; and, as between co-sureties, it seems to have been adopted on the ground that, as courts of equity had established an equitable right to contribution, the law should imply a promise by each to each, to contribute to their joint liability, their respective parts, whenever the pre-established principles of equity should require contribution.
It is well settled that, in equity, a surety, who has paid the debt, is not entitled to contribution from a co-surety *308 as long as he may be able, by ordinary diligence, to obtain restitution or indemnity from the principal debtor; and that, before any payment of the debt, any one of several sureties may maintain a bill against his co-sureties and their principal to compel the latter to pay it, if he be able; ox the former to contribute to the payment of it, if he should be unable to pay it.
eovery, it is said, is only according to the number any'reward to*tbe insolvency of any of them. At law, the re-
Assumpsit can-effothüSiate by’one of sever-haspaidthedebt” against a co-sure-hution°,r without proof of the hi principal debtor!
And as the principle on which courts of equity interfere in behalf of a surety, against his co-surety, is that of equalizing a common burden, not only does a payment by one of several sureties, not entitle him to contribution from a co-surety, as long as he might obtain indemnity from their common principal, who is liable, in the first instance, for the whole debt, but, if there be more than two co-sureties, and any one of them be insolvent, as well as their principal, the burthen will be distributed by a court of equity among the solvent sureties, just as it should have been, had they alone been bound.
It has been said, however, that, in an action of assump-notwithstanding the insolvency of one of several co- ° ..... sureties, one of them who had paid the joint debt, cannot recover °f another who is solvent, more than his aliquot part, apportioned according to the number of sureties who were bound; because, as has been also said, the act of becoming co-sureties implies a mutual agreement that each will contribute such numerical ratio of the debt, in the event of the principal’s failure. Theobald’s Principal and Surety, 266; Cowell vs. Edwards, 2 Bos. and Pul., 267-8; Brown vs. Lee, 6 Barn, and Cres. 689.
And it is true that, in Cowell vs. Edwards, (supra,) w^ich was assumpsit by a surety against his co-surety, Lord Eldon, Chief Justice, said that, it was ííparhaps “ ^ien to° late to h°ld that this action could not be “maintained at law, though neither the insolvency of “ principal nor of any of. the co-sureties were prov- « ed;” and it seems that, in New Hampshire, that dictum has been recognized as the true doctrine of the law. Odlin vs. Greenleaf, 3 N. Hamp. Rep., 270.
But our predecessors expressly decided (in Pearson & Co. vs. Duckham, 3 Litt. 385,) that assumpsit could not *309 be maintained by a surety against a co-surety, on account merely of a payment made by the plaintiff, unless' their principal was unable to make restitution.
From the actual payment of the debt of an insolvent debtor, by a surety, the law implies a promise to him, by each eo-surety, to reimburse him a ratable portion of the sum paid. And it is not necessary, in as-sumpsit for such contribution (tho’ Star/de says otherwise , ) to prove, that an application was made to the deft, for contribution, before the payment was made.
Hence it appears that there may be some diversity of opinion as to the foundation, and extent of the assump-sit implied by law, between co-sureties for the same debt or duty.
It seems to us, however, that the only assumpsit resulting by implication from a mere payment by one of several co-sureties, is that the principal, so far as he may be able, shall make restitution first, and that, so far only as he may be unable, the co-sureties shall make contribution. So far as the principal may be able to refund it, money paid by one of his sureties, was, in judgment of law, paid to his use, and not to the use of his other sureties; and to that extent, therefore, the law should not imply any assumpsit by those other sureties — especially as they were not equitably responsible for contribution, and the action of assumpsit against a co-surety, for money paid to his use, is founded on the principle of contribution and partial indemnity, first'recognized and enforced in courts of equity. ■
We shall, therefore, adhere to the doctrine of our own Court, as established in Pearson & Co. vs. Duckham, (supra,) because it is more authoritative, as well as more reasonable and consistent, than any opposing post-revolutionary dictum or decision in England.
Starkie, in his third volume on Evidence, 1384, says that, “in an action by a surety against a co-surety, the “ plaintiff must prove his application to the defendant to pay “ his share, and the payment by himself.” But application to a co-surety to make contribution before payment, could certainly not be necessary to the maintenance of an action founded on an assumpsit resulting, by implication, from the simple fact of payment by another surety. If such an application can be necessary, in any case, it must be so only on the hypothesis that the act of binding themselves as co-sureties, implied a promise by each to each, to contribute his aliquot part to the payment of the common debt, whenever any one of them should be called on to pay it, and should call on *310 the others to help him to meet the demand. And, if there be such an implied promise, coeval with the principal obligation, then, as there might be a breach of it, even when the principal debtor is solvent, proof of his insolvency would not be essential to the maintenance of of an action of assumpsit for such a breach of such a promise, and a demand of contribution, before payment, would of course be necessary in such a case.
Three sureties «fethemUnhadTa° ken a mortgage pal™ebtorftoTn-demnify them against the same and other liabilities^oneofthem broV assumpsit against the third surety, who had no indemnity,for Hezl'thatüíeac tion cannot be ouTshowlnJthat the mortgaged properl^dLpoT-ed of, without ha ■debt r which contribution is
The only appro ipriate .remedy in such a case, is in equity; where alt parties interested may be brought before the court;. the mortgag’d estate properly distributed, and, in case of a deficit, a decree may be rendered for contribution. —terminating the controversy.
*310 It is not necessary, however, now to decide whether there is any such promise implied from the act of becoming co-sureties; for there can be no doubt that, without any demand of contribution, prior to payment, an actual payment by one surety, imposes on his co-sureties an obligation to indemnify him, so far as the principal cannot do it, and that, from such payment alone, the law implies a promise by each co-surety, to discharge such ulterior and contingent obligation; and this suit is founded and attempted to be maintained on that implied assumpsit alone, there having been no attempt to prove a demand, and refusal to make contribution, before payment.
Then it appears to us, very clearly, that this action cannot he maintained, unless the plaintiff had shown that he had disposed of the mortgaged estate in a proper manner, and that still the debt now sued for, or some part of it, remains unpaid. In such a case, there should . . , ... , be no recovery against a co-surety, either m equity or at law, without proving an inability otherwise to obtain restitution. McCormack's Administrator vs. O’Bannon’s Executor et al., 3 Munford's Rep. 487; Theobald, (supra.) 7 J 7
. . As to the estate mortgaged tor the indemnity or the P^11^ *n this action, Langhorne is not shown to be insolvent; nor, to that extent, does it appear that the P^mtiff has sustained any loss, or needs any further indemnity. The mortgaged estate may not, when proPerty disposed of, insure full indemnity for the debt now sued for; but a jury cannot, with any safety or propriety, determine how far it may be insufficient,
It therefore seems to us, that the only appropriate reme(ty5 according to the facts as they now appear, is a suit in chancery, in which all persons interested being *311 made parties, the proceeds of the mortgaged estate might be properly distributed, and then, if there shall be any deficit, a decree for contribution might be rendered, whereby the whole controversy, among all concerned, might at once be wound up, equitably and finally.
Wherefore, as the instructions given by the Circuit Judge are inconsistent with the principle of this opinion, the judgment is reversed, and the cause remanded.