JUDGE WILLIAMS
delivered the opinion of the court:
August 24, 1866, appellant borrowed of the Falls City-Bank of Louisville two thousand dollars at thirty days’ time, and executed a mortgage on a house and lot on *539 Bullitt street, in said city, to secure its payment, with power to the bank, upon default of payment, and upon ten days’ notice of the time and place of sale, to have the property sold, by any licensed auctioneer of the city, for cash or upon credit, at its own option, and with a power also to purchase the property, or any part of it.
Appellant having made default, the parties agreed, September 27th, 1866, “that, in lieu of publication of the ten days of sale provided for in said mortgage, a notice of the sale, posted on the property five days before the day of sale, shall be sufficient,” which agreement was signed by H. C. Pindell, cashier, and said appellant. By reason of this agreement, a licensed auctioneer of the city did, October 4th, 1866, he having put up a notice of sale on the premises five days previously, first sell the north half of said lot to appellee, Gardner, who purchased it for one thousand dollars cash, and then the other half, and said Pindell for the bank purchased it for one thousand dollars, credited on said Hahn’s note, and the next day the bank, by L. L. Warren, its president, made a deed to both purchasers.
Said Hahn having refused to give possession of the premises, it being his dwelling, as may be presumed from the pleadings and exhibits, the purchasers, November 10th, 1866, brought their separate actions for its recovery, to which defendant demurred, and which the court overruled, and no further answer being offered, pronounced judgment of eviction in each case, from which these appeals are prosecuted.
This power thus summarily to sell is claimed on the part of the bank by virtue of its charter, approved January 21st, 1865, and which contains the following provisions :
*540 “ Said bank may deal in the loaning of money, exchange, promissory notes, and other evidences of debt; take personal and other securities for the payment thereof, and dispose of the latter as may be agreed upon, in all respects as natural persons may do under the common law.” This provision, extraordinary in its character, and clothed in a language not calculated to attract the notice of the Legislature, and being wholly at war with the general policy of the general statute laws of the State, enacted as early as the year of 1820, and re-enacted by the revision (2 Stant. Rev. Stat., 230, sec. 14, chap. 80), which declares all sales by a trustee by virtue of a deed, to secure the payment of debts or a pledge, to be invalid, and incapable of passing any title, “ unless the sale be in pursuance of a decree or order of court, or the maker of such deed or pledge shall join in a writing evidencing the sale, must be strictly construed, and the power exercised under it vigilantly scrutinized by courts, even if it be conceded, that it gives to the bank all the rights recognized by the common law to mortgagees who may be natural persons, which is not necessary now to be decided, and, indeed, which we cannot now properly decide, because the power has not been strictly pursued, and therefore the sales defective, even if the power be conceded.
The power is to sell the property upon notice; this notice, it was afterwards agreed, should be put upon the premises five days, instead of being published ten days in a newspaper previous to the day of sale; and this was the only alteration made. There is but one single clause in the mortgage which can be construed as authorizing a sale by parcels; that is, “ the bank may arrange to have the property, or any part thereof, bid for at the sale for its own benefit; but this did not authorize a sale by parcels under a notice of a sale in e:ross.
*541 The notice is to sell the property without designating that it would be sold in parcels. Of course this was no invitation to persons who might want to purchase only a part of it; and, therefore, as they would naturally suppose the whole lot would be sold in gross, it being fifty by sixty feet, there could be no reason why they should attend the sale; and those who might desire to purchase the whole lot, finding it exposed by parcels, might decline to bid, so that, virtually and legally, the sale as it did occur was really not advertised at all.
Under the provisions of the power a sale in gross was conferred upon the bank, which was to pay over to Hahn any surplus the property might bring, or it could sell by parcels, in which case, when the amount of the debt was raised, perhaps the power would be exhausted; but however this may be, the notice must be in pursuance of the power, and the sale in pursuance of the notice, and a departure of either from the other rendered the sale invalid.
It is said by Kent (4 vol. Com., Comstock’s edition, 156, sec. 58), that “ an agreement at the time of a loan to purchase for a given price, in case of default, is not permitted to interfere with the right of redemption, though an agreement to give the mortgagee the right of preemption in case of a sale has been assumed to be valid. But at our public sales, which always take place when the equity of redemption is foreclosed, either by judicial decree or under the operation of a power to sell, no such agreement could have application; and it may be questioned whether it does not come within the equity and policy of the general principle, which does not permit agreements at the time of the loan, for a purchase in default, to be valid.”
*542 If this agreement that the bánk might purchase be disregarded, there is no power to sell by parcels, and the bank would have to stand on her right to sell the whole under the general power, else upon her right recognized by law to sell a sufficiency to pay the debt, neither of which secures the right to sell by parcels.
On the same page the learned commentator says: “The mortgagee may contract, subsequently to the mortgage, for the purchase or release of the equity of redemption, upon fair terms; and yet no agreement for a beneficial interest out of the mortgaged premises, while the mortgage continues, is permitted to stand, if impeached in a reasonable time. The reason is, that the mortgagee, from his situation, wields a very influential motive, and he has great advantage over the mortgagor in such a transaction.” And, he continues, that “in New York he is permitted by statute to purchase, at a sale under a power, though he be the person who sells, provided he acts in good faithbut “ without such a statute provision, the purchase would be subject to the scrutiny of a court of equity, and liable to be impeached, though the purchase is defeasible only by the cestui que trust, and not ipso facto void.”
This charter, nor any other statute of the State, gives the bank the right to purchase when it is the vendor, or may sell by virtue of a power in the deed, though the sale be made through the agency of another; therefore, such purchases by it must be held to the strictest scrutiny of the chancellor, when assailed.
It is true, the purchaser in this instance is not assailed by answer, yet when it appears that real estate is sold for cash, upon five days’ notice, stuck up on the premises alone, and that written eleven days after the debt became due, and within forty-one days of its creation, courts of *543 justice will vigilantly scrutinize the power, and every step taken under it, and hold them to a most rigid compliance with a power so dangerous to debtors, and so conflicting with the general policy of the statute- laws, and upon its proper assailment, apply the just and enlightened and equitable rules now generally recognized by the American courts.
We will not now determine whether the equitable rules now generally recognized by the courts of this and our sister States, as being engrafted on the common law, authorizes a mortgagee to sell real estate without a decree of foreclosure, especially in a State where the public and general policy of the statute laws have forbidden it for near half a century. It will be sufficient to determine this question when it shall be presented by specific pleadings and issue; it is now sufficient to say, the petition and exhibits do not show a proper exercise of the powers conferred by the mortgagor on the mortgagee, and therefore the demurrer should have been sustained; and unless an amended petition shall be presented within a reasonable time, setting out such an exercise of power, both petitions should be dismissed absolutely.
If such amended petitions should -be presented, the defendant should be permitted, by answer, to assail both the power and its exercise, as well as the sales and purchases, and to present such a defense as may be legal and equitable.
The vigilant scrutiny of transactions between mortgagor and mortgagee, which it is the duty of courts of equity to exercise, was well commented on by this court in Perkins vs. Drye, 3 Dana, 175-80.
The judgment is therefore reversed, with directions for further proceedings as herein indicated.