CHIEF JUSTICE WILLIAMS
deuivered the opinion op the court:-
Some twenty creditors of Wm. Jarboe sued out separate attachments against him, and these were heard together without an order of consolidation.
*72 Some of these plaintiffs were permitted to. testify in behalf of others, and of this Jarboe complains.
By subdivision 6, section 670, Civil Code, only parties to the issue, or parties interested in the issue, are rendered incompetent; the rejection of some could only be erroneous as to the plaintiffs. These several plaintiffs were no parties to the issue as to the others, nor were' they interested, as each must stand upon the evidence he produced, and his testimony could not be heard or considered in his own' case. Had this been a jury trial, it would perhaps have been calculated to mislead and confuse the jury, but not so with the court; beside, the order shows that the hearing together was upon “ the motion of the parties.”
The similarity of interest could, at most, only go to the credibility of the witnesses.
When a deposition is begun in the presence of both parties, but too late in the day to get through, and the witness is necessarily called off the next day, and the party against whom it is to be used will not agree on a future time to finish it, and is then notified that some other deposition will be taken the following day, so as to preserve the right then to adjourn over to the next day, when the deposition of the first witness will be finished, the deposition should be read, and not quashed, for the reason that it was not continued on consecutive days; nothing in the Civil Code or other laws of this State forbid, and there is nothing' unreasonable or vexatious in such a proceeding when produced by a necessity.
As Frank Ford and Jno. R. Jarboe were secured in their securityship for Wm. Jarboe by mortgage on his home farm, no cause of attachment existed as to them. Without averring and showing the insufficiency of their security, he could not have disposed of this so as to *73 defeat them, if their mortgage, was properly recorded, which seems to have been the case; but as he induced them to take out attachments, he cannot be heard to object and defeat them for-this cause. The other creditors might, perhaps, defeat them by showing that this was a fraudulent arrangement to secure the debtor’s property from his other .creditors; but there can be no such question as between the plaintiffs and the defendant.
The act of 1861, Myers’ Supplement, authorized the clerk to issue attachments on debts not due. The legal title of the storehouse and lot claimed by W. T. Jarboe was in his father ; he had bid it off at a decretal sale, and, as we must presume, accepted the commissioner’s deed. Having never notified the commissioner to make it to his son, the assignment of the certificate of purchase /of anterior date to the deed is, of itself, no evidence, when assailed by creditors as fraudulent; for it has often been decided by this court that the recital of deeds even are not, when assailed by creditors as fraudulent.
Wm. Jarboe’s home tract consisted of three different contiguous tracts purchased from different vendors. The middle tract being nearly two hundred acres, on which the dwelling-house was situated, and that mortgaged to Ford and Jarboe. It sold for just the mortgage debt and costs.
As some of the debts were subsequent to June 1, 1866, he claims that a homestead of one thousand dollars’ worth should have been assigned him out of the other portions of the tract.
The act of February 10, 1866 (Myers’ Supplement, 715), provides, that “ there shall be exempt from sale under execution, attachment, or judgment of any court, except *74 for a foreclosure of a mortgage given by the owner of a homestead, or for purchase money due therefor, so much land, including the dwelling-house'\a.nd appurtenances, owned by the debtor, as shall not exceed in value one thousand dollars.” Said act also provides the manner of proceeding to ascertain the value; and if .the homestead is of greater value than one thousand dollars, and not divisible, for a sale, and the payment of one thousand dollars to the debtor to purchase him another home; and by section six this act is only to apply to white persons “ who are actual bona fide housekeepers, with a family,” and not then to existing debts prior to the purchase of the land or erection of the improvements thereon.
It is most manifest, therefore, that the object was to secure to a white debtor with a family the house in which he may live and the appurtenant lands, not exceeding one thousand dollars. It may not be essential that the family should be actually in the house when the execution may be levied, but it must then be the actual b.ona fide residence, or, in other words, the home place, so actually regarded by the debtor; and if actually living there, he shall mortgage it, he thereby waives his right of exemption, unless the home house and appurtenant lands shall be sufficient to pay the mortgage apd leave him a surplus.
We will not say that if the lands so mortgaged should be sufficient to pay the mortgage, and still leave him a thousand dollars for a home, he may not claim it; but we do say, if the mortgage debt exhausts the mortgage premises of dwelling-house and appurtenant lands, not leaving a surplus, though it be of more than one thousand dollars in value, that then he is precluded from asserting a right to a homestead out of other lands; because this would be extending the homestead right beyond the language of *75 the enactment, and this, too, whether the mortgage be for prior or subsequent debts to June 1, 1866.
So far, as sustaining the attachments and oi’dering the sales, we find no errors; but as to the manner of the commissioner’s sales, as these were properly questions, and motions on notices to the purchaser, to set them aside, we do find errors.
The commissioner advertised for sale the home tract, containing- “about three hundred acres;” the Buckman tract, “containing about three hundred;” and the Jack Raley tract, “ containing tv)o hundred acres;” G. B. Mudd tract, “containing two hundred and two acres;” and “ commission house.” He reports that he actually sold that part of Jarboe’s home tract mortgaged, except one acre, at $1,781 84. He next sold “the Wm. Gates part of the home tract, said to contain ninety-eight acres, and the one acre adjoining, which was left of the other tract, making ninety-nine acres.” He then sold “that part of the home tract, containing fifty acres more or less. The tract was sold in gross.” He then sold the Buckman tract in two parcels ; and also sold the Raley tract in two parcels; and the Mudd tract of two hundred and two acres; and the commission house.
If the commissioner might sell these several tracts in parcels under the judgment, it was his duty to so advertise them; the object of the law being, to inform the public that a sale of certain property will occur, and to invite them to the sale.
As was held by this court in Hahn vs. Pindell (1 Bush, 540), an advertisement of a sale in gross is no notice of a sale in parcels; and an advertisement of a sale in parcels is no notice of a sale in gross; and for the very potent reason, that a person wishing to purchase a part of the tract would not be invited by such a notice to a *76 sale of the whole tract in gross; nor would one wishing to purchase the whole tract be invited to a sale of it in parcels; therefore, the sale must pursue the advertisement, whether it be in gross or by parcels.
As to the land, all the sales were a departure from the advertisement, save as to the Mudd tract of two hundred and two acres; and Jarboe’s exception to said sales should have been sustained, except as to it. On a return of the cause, said sales should be set aside, and before another sale, the tracts of land should be surveyed to ascertain how much they severally contain, should Jarboe require it. And if the interest of the parties require a sale in parcels, it would be well for the court so to adjudge and direct the commissioner.
The sale of the Mudd tract of two hundred and two acres to Thomas Durham seems to be regular, and it is sustained.
The commissioner’s deed to William Jarboe shows he purchased the commission house and ground, as therein described; yet the ground was neither advertised nor sold by the commissioner in this case, but only the house. This perhaps was an oversight; but it was a fatal one to any sale of the house, as well calculated to be. injurious both to the debtor and the purchaser, for which reason it must be set aside, and a resale ordered.
Although W. T. Jarboe’s claim to the commission house was rather informally presented, yet, after choosing the manner of its presentation, and as it was substantially and justly adjudicated, and as the Code does not require that it should be by formal pleadings, and as the real issue was tried, we see no reversible error for him.
Wherefore, the judgment confirming the several sales is reversed, except as to Thomas Durham, and affirmed *77 as to him, with directions for further proceedings consistent herewith. The attaching creditors will recover their costs against Wm. Jarboe; and he will recover his costs against all the purchasers and defendants on the motion to set aside the sales, save as to Thomas Durham, who will also recover his costs as to WTm. Jarboe; and the attaching creditors, litigating with Wm. T. Jarboe, will also recover their costs of him.