JUDGE PRYOR
delivered the opinion oe the court.
L. C. Tappey recovered a judgment in the Jefferson Court of Common Pleas against W. J. Mount for the sum of six hundred and thirty-six dollars, with interest, etc. An execution issued on the judgment and was replevied by Mount, with the appellee, Jefferson Williams, as surety.
Upon the maturity of the replevin-bond an execution issued thereon, and was placed in the hands of the sheriff of Jefferson County, and while in that officer’s hands the principal in the debt (Mount) prosecuted an appeal to this court from the original judgment; and, in order to stay all proceedings in *218 the court below, executed a supersedeas-bond, with the appellant, Joseph F. Kellar, as surety.
The supersedeas having been issued, etc., the sheriff returned the execution with the facts indorsed to the office from which it emanated. The judgment of the court below was affirmed by this court, and an alias execution issued on the replevinbond, that was satisfied by the surety therein (Williams), and so returned by the officer.
The present petition in equity was then filed by Williams, the surety in the replevin-bond, against Kellar, the surety in the supersedeas-bond, setting forth the facts already stated, with the allegation that at the time the first execution on the replevin-bond was in the hands of the sheriff the principal debtor (Mount) owned property subject to levy and sale amply sufficient to pay the debt; that all proceedings to collect the money on this execution were stayed by the execution of the supersedeas-bond, and that while the case was pending in the Court of Appeals Mount became insolvent; that by reason of the execution of this bond and the delay in collecting the debt occasioned thereby, connected with the insolvency of Mount, the appellee was compelled to pay the debt. He therefore seeks to be substituted to all the rights of the creditor Tappey, and for judgment against Kellar, .the surety in the supersedeas-bond, for the amount he (Williams) paid as surety on the replevin-bond..
Judgment was rendered in the court below in favor of the appellee for the debt, interest, cost, etc., from which this appeal is prosecuted.
It is insisted by counsel for appellant that if any liability whatever exists, which they deny, the appellant is liable as a co-surety only for contribution.
It is a general rule of equity that all persons liable for the same debt, although by different obligations, executed at different times, are regarded as co-sureties, and will be compelled *219 to contribute to the payment of any loss that a co-surety may sustain by having discharged the debt.
The present case, in our opinion, is not embraced by this rule. The obligation to pay on the part of Williams, the surety in the replevin-bond, was absolute and unconditional, while that entered into by Kellar was only conditional, and embraced other and different liabilities than those imposed by the stipulations of . the replevin-bond. The supersedeas-bond was executed in order to correct the errors, if any, in the original judgment, and at the instance of Mount, the original debtor, as it is not pretended that Williams was liable upon the original note, or that the appeal was taken at his instance. At the time the appeal was taken and the supersedeas executed Williams, although bound as surety on the replevin-bond, was in no danger of sustaining any loss. The execution was then in the hands of the sheriff, with property owned by the principal debtor, subject to levy and sale, more than sufficient to pay «the debt. While Williams was thus secure in his liability the appellant, at the instance of the real debtor and for the purpose of relieving him, executed a conditional bond, having the effect and executed for the purpose of preventing its collection (the writ of execution being then in the hands of the sheriff and Mount’s property subject to its payment), causing a delay by which Mount’s property was released from the lien created by the execution, and during- which period Mount himself became insolvent.
The appellee was no party to this proceeding, and was made to pay this debt by reason of this intervention by the execution of the supersedeas-bond. The facts of this ease show the wrong and injustice that would be done the original surety by denying him any relief as against the party causing the loss, or in even requiring the last surety to contribute only in the payment of an equal part of the debt.
The doctrine of substitution is founded alone upon prin *220 ciples of equity and justice, and when this debt was in a condition to be made out of the property of the principal debtor- the appellant interposed his conditional obligation to pay the money, thereby causing this loss to the appellee; and there is no reason why equity should not intervene by substituting the appellee to the rights of the original creditor, so as to enable him to compel the appellant to pay only what he had undertaken by his conditional obligation to pay.
"Whether the rule in the case of Parsons v. Briddock (2 Vern. 608) be sound in principle or not, in the present case the equity of the appellee is superior to that of the appellant, for the reason that by the action of the latter the loss by the former was sustained; and as said by Sergeant, J., in the case of Pott v. Nathan, “ It is sufficient that it is settled that if the interposition of the second surety may have been the means of involving the first in the ultimate liability to pay, the equity of the first surety decidedly preponderates^’
The case of Parsons v. Briddock, and other cases following it, is based upon the general doctrine that a surety who pays to the creditor the debt due by his principal shall be entitled to all the securities for the debt that the principal himself had. Whether this doctrine would apply in a case where the loss was not occasioned by the act of the last surety is not necessary to be determined.
' The cases of Nathan v. Potts (1 Rawle & Watts, Penn., 397), Brandenburg v. Flynn’s adm’r (12 B. Mon. 399), and Patterson v. Pope (5 Dana) fully sustain the doctrine maintained in the present case.
Section 8, chapter 97, Revised Statutes, giving the surety the right to an assignment of the judgment when he shall have paid the debt, was enacted to enable him to have an execution issued on the judgment, and to control it in every other respect as if it had been obtained in his favor. Instead *221 of being a limitation or restriction on the rights of sureties, the act was intended to enlarge their legal and equitable rights by vesting them with other rights that theretofore could not be exercised in the attempt to obtain indemnity or remuneration, the equitable doctrine of substitution not being in any manner affected by this enactment.
The execution of the replevin-bond was no waiver of the errors, if any, contained in the original judgment. While the case was pending no act of the debtor incidental to such a proceeding to enable him to prevent his property from being sold to satisfy what he supposed to be an erroneous judgment can be deemed to be a waiver of his right to an appeal. He might have satisfied the judgment by an actual payment of the money;, and if reversed, the creditor by rule could have been required to refund it. It needs no authority or argument in support of such a proposition. The effect of the supersedeas was to stay all proceedings on the judgment; and all costs accruing in the attempt to collect the same up to the issuing of this writ the appellant is liable to pay.
The judgment of the court below is affirmed.