## Kelley, et al. v. Ramsey.

(Decided June 22, 1917.)

### Appeal from Grayson Circuit Court.

1. Partnership—Contribution.—One partner can not maintain an action against another partner for contribution, on account of the payment of partnership liabilities, until a settlement is made of the partnership assets and liabilities, so it can be determined whether anything is due from the partner sued.

2. Principal and Surety—Contribution.—A surety, who has paid a debt for his principal, can not maintain an action against a co-surety, unless he both alleges and shows, that the principal is insolvent.

3. Corporations—Principal and Surety—Insolvent Corporation—Contribution.—A surety for a corporation, which owes more than the value of its assets, and the value of its assets can only be conjectured, must take proceedings to settle the corporate affairs, so that it can be known what part of the debts the assets will pay before he can recover a judgment against a co-surety for contribution.

4. Homestead—Exemption.—Where land, which is occupied as a homestead, is adjudged to be sold for debt, the debtor may select such portion of it as he may desire, not exceeding in value one thousand dollars, and hold it, as exempt as a homestead, although the portion selected by him does not embrace the dwelling house upon the homestead.

G. W. STONE for appellants.

W. O. JONES for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming upon original appeal and reversing upon cross-appeal.

The appellants, Giles Kelley, W. H. Henninger, and T. W. Hogan, and the appellee, J. C. Ramsey, were the stockholders in a corporation known as the Grayson County Fertilizer Company. The capital stock amounted to the sum of two thousand dollars, and each of them was the owner of one-fourth thereof. They manufactured and sold fertilizer during the years 1911, 1912, and 1913, but about the first of January, 1914, they ceased to do business and it seems, sold the tangible property belonging to the corporation, or probably their stock, but the corporation retained ownership of all the notes and accounts, which were owing to it by the various parties and which amounted to about thirty-one hundred dollars of face value. While the corporation was engaged in

business, it borrowed from a bank fifteen hundred dollars, and, also, from one Rogers the sum of one thousand dollars, and for which the corporation executed its notes with each stockholder a surety. On the 20th day, of March, 1915, the appellee, who was largely encumbered with debts, and which were secured by mortgages or liens upon his real estate, approached the appellants and represented to them, that some of his creditors had sued him and that the result of it would be his financial ruin, and that he had conferred with an attorney at Louisville, and made up his mind to take the benefit of the Federal Bankrupt Law, and that he had been advised, that if he did so, it would be necessary for him to list as one of his assets his interest in the notes and accounts, which were owned by the corporation, and that the proceeds of the same would be taken and applied to the payments of the debts held by his various creditors, and that the appellants would be deprived of such proceeds, in the payment of the debts to the bank and Rogers, upon which he was jointly bound with them, but if they would agree to assume the payment of the notes upon which he was bound with them as sureties of the corporation, that he would assign to them the benefit of his interest in the notes and accounts, which were owned by the corporation, and all of them being of the opinion, that his assignment, in bankruptcy, would carry with it his interest in the notes and accounts of the corporation, and that the corporation would lose them in the payment of the debts upon which they were sureties, the appellants accepted his proposition, and writings were entered into in accordance with the proposal made by him. Within a few days, however, he was unexpectedly able to make such sales of his real estate, that with the proceeds of it, he satisfied his creditors and paid all of his outstanding debts, except a five hundred dollar debt, which was secured by a lien upon one of the lots which composed his homestead, in Leitchfield, and he therefore abandoned his purpose to take the benefit of the bankrupt laws. Thereafter the two creditors, who held the notes for fifteen hundred dollars and one thousand dollars, respectively, against the corporation, required the appellants to pay or renew the notes, which they did by executing and delivering their individual notes in satisfaction of the two debts. Very soon, thereafter, the appellants filed this action against the appellee to recover from him six hundred and sixty-five dollars and fifty cents, which they

claimed he was indebted to them as a co-surety upon the two notes, which they had satisfied by the execution of their individual notes. At the same time, they procured an order of attachment and caused it to be levied upon a lot of ground in Leitchfield, belonging to the appellee and which was encumbered by the purchase money lien of five hundred dollars. The appellants, instead of alleging, that they and the appellee were sureties upon the two notes of the corporation, which they had satisfied, alleged in their petition that they and the appellee were joint obligors, and in their reply, in which they endeavored to set out the relations between them and appellee more specifically, alleged that they and appellee were partners and incurred the debts, which they had paid, and on account of which they were seeking contribution from the appellee, as a partnership. The appellee, in his pleadings, failed to divulge the true state of case, but resisted the recovery against him of the sum sued for, upon the ground, that by the contract between him and appellants, entered into on the 20th day of March, 1915, they had assumed the payment of the debts, in consideration of his assignment to them of his interest in the notes and accounts belonging to the corporation, and he resisted the attachment upon the ground that the lot, upon which it had been levied, was exempt as a homestead. The appellants, to avoid the contention, that they had agreed to assume the payment of the debts as above stated, averred that they were induced to do so by the fraudulent representations of appellee, and that the undertaking on their part, to assume the payment of the two notes and to release appellee from liability, was without consideration to support it.

The proof showed, without contradiction, that appellants and appellees, instead of being partners, and instead of the debts, which appellants had paid and for which they were seeking contribution, being debts of a partnership, they were debts of the corporation, in which they were stockholders, and that they were sureties upon the two notes of the corporation. Proof was taken as to the value of the assets of the corporation, and the chancellor, who heard the case below, held that the assets in the way of notes and accounts held by the corporation were sufficient to liquidate fifty per cent. of its debts, and that the parties were not partners, but sureties of the corporation, and that as such appellants were entitled to recover of appellee fifty per cent. of one-fourth of the

two debts, which had been paid, and adjudged that the release from liability upon the notes relied upon by the appellee was without consideration, and for that reason not binding, and that the grounds for the attachment were sufficient to sustain it, but that the lot levied upon was exempt to appellee from attachment as a homestead.

The appellants have prayed an appeal from that portion of the judgment, which held that the property levied upon was exempt from the attachment, while the appellee has prayed a cross-appeal from that portion of the judgment, which adjudged a recovery against him by the appellants.

It is insisted by appellee, that the judgment against him in favor of the appellants was erroneous. If the parties were partners, as alleged by appellants, and the notes, upon which they and appellee were jointly bound were obligations of the partnership, it is well settled that appellants could not maintain a suit against appellee for contribution on account of the payment of the partnership debts by them, until a settlement had been made of the partnership assets and liabilities, so as to determine as between the partners whether anything was due from him. Before a partner can maintain an action against another partner, for contribution, on account of the payment of the partnership liabilities, a settlement of the partnership must be shown, unless the liability is outside of the partnership business, or where the partnership only consisted of a single venture or transaction and where no accounting is necessary. Warring v. Auditor, etc., 98 Ky. 34; Lawrence v. Clark, 9 Dana 259; Shearer v. Francis, 9 R. 556; Stone v. Mattingly, 14 R. 114; Story v. Moon, 3 Dana 334; Dana v. Barrett, 3 J. J. M. 8; Durand v. Cunningham, 1 R. 277; Ward v. Best, 8 R. 784; O'Bryen v. Drexilius, 7 R. 527; Sebastin v. Booneville Academy Co., 22 R. 186; Coulson v. Ferree, 27 R. 451. The chancellor holding that substantial justice could be had between the parties in spite of the state of the pleadings and the variance, between the allegations and proof, regarding the relation of the parties to each other, held that the parties were sureties of the corporation, and that appellants, on account of the payment of the two notes, were entitled to contribution from the appellee to the extent of his alliquot part of the obligations, after deducting from the sums of them, the amount, which, from the evidence, it appeared that the assets of the corporation would satisfy. The debts of

the corporation appear to be in the neighborhood of three thousand or thirty-five hundred dollars, while the assets, which consist of the unpaid notes and accounts owned by the corporation, are, from the proof, of very uncertain value. The unpaid notes, according to their face values, amount to perhaps fourteen hundred dollars, and the accounts probably to an equal sum, but a variety of opinions exist among the parties and witnesses as to their actual value, ranging from the gross sum of five hundred dollars to fifteen hundred dollars. It is easily to be seen, that any judgment, which might undertake to fix their actual value might be far from the amount, which could be realized from their sale or collection, which is, of course, the actual value to be placed upon them, when undertaking to fix the amount which appellee should contribute because of the two notes paid by the appellants and on account of which they are seeking contribution from the appellee. One co-surety may maintain an action against another for contribution because of the payment by him of the debt upon which both are bound, but as held by a long line of adjudications in this court, he cannot do so unless he both alleges and shows that the principal, who is primarily bound for the debt and should pay it, is insolvent. Daniel v. Ballard, 2 Dana 296; Crow v. Murphy, 12 B. M. 445; Bolling v. Doneghy, 1 Duvall 220; Lee v. Forman, 3 Met. 115; Morrison v. Poyntz, 7 Dana 310; Gilmore v. Guenther, 4 R. 522; Atkinson v. Stewart, 2 B. M. 348; Poignard v. Vernon, 1 Mon. 45; Pearson v. Duckham, 3 Litt. 385; Lampton v. Bruner, 2 Litt. 141; Beasley v. Deboe, 9 B. M. 347; Brown v. Gillispie, 10 R. 634; Brann v. Monroe, 11 R. 324; King v. Nichols, 12 R. 293; Buckler v. Rogers, 6 R. 451; Million v. Newby, 6 Ky. Opin. 76; Mitchell v. Phelps, 4 Ky. Opin. 102; Oldham v. Price, 5 Ky. Opin. 95. While the above stated rule does not generally prevail, it has long been firmly established in this jurisdiction. It does not mean that the surety, who pays the debt, is compelled to sue the principal and having obtained a judgment, must have an execution and return of no property found before he can maintain an action against his surety for contribution, but he is obliged to show by competent evidence, if the allegation is denied, that the principal is insolvent and the debt cannot be collected from him. Brown v. Gillispie, *supra.* The statute, section 4665, Kentucky Statutes, authorizes the surety, who has paid the debt, to sue his co-surety for contribution, either

alone or together with the principal. If the principal can be made to satisfy a portion of the debt, a co-surety is required to contribute to the payment of the unpaid remainder. Section 4666, Kentucky Statutes, provides that when a surety satisfies a judgment against the principal and sureties, such paying surety is entitled to have an assignment of the judgment and may control it so far as to obtain from the principal the entire debt paid, or from any co-surety his proper part of such payment. In the instant case, the proof shows very conclusively, that the corporation, which is the principal debtor, is insolvent, that is, in the sense that it has not sufficient assets to satisfy all of its debts. The pleadings of the appellants allege that its assets are insufficient to satisfy more than fifty per centum of its indebtedness, and from the evidence the character of the assets are such that it is impossible to safely place any particular value upon them, as any value placed would be mere conjecture. The notes owned by the corporation are fifty or sixty in number, and the accounts are a considerable number. The appellants, as sureties, are entitled to maintain the suit against appellee as a co-surety for contribution, because it is evident they have sustained a loss in being compelled to satisfy the debts for which appellee was equally bound with them as a surety. By the corporation owning assets from which they may recoup their losses in part, it is impossible to determine what sum they ought to recover from appellee in the way of contribution, until the value of the assets of the corporation are ascertained. It does not appear, that, as said of a similar matter, in Morrison v. Poyntz, *supra*, a court can with any safety determine how far the assets may be insufficient to make restitution to the appellants. This can only be ascertained, under the facts of this case, when a settlement is effected of the corporate assets and liabilities, and its assets be made available in money. Hence, the judgment for recovery against appellee, in favor of appellants, is erroneous. The appellants could, if they had desired to do so, have made a settlement of the corporate affairs, by suit, or making it a party to this suit, if necessary, or otherwise, and determined what the assets of the corporation amounted to.

The appellee insists that the chancellor erred in denying his plea to the effect, that he had contracted with appellants, by which they had assumed the payment of their joint obligations and released him from lia-

bility, in consideration of his assignment to them of his interest in the corporation notes and accounts. The notes and accounts, however, were the property of the corporation, and were insufficient to satisfy the corporation's liability, as was well known to the parties, and appellee had no interest in them, which he could assign. The notes and accounts were bound as much for the corporation's liability before the attempted transfer of them by appellee, as thereafter, and hence appellants received nothing by the transfer and appellee parted with nothing thereby, and hence there was no consideration to uphold the contract to release appellee from liability upon the debts upon which he was a surety for the corporation, and the chancellor properly so held.

The remaining question presented for review is whether the lot upon which the attachment was levied was exempt from attachment or coercive sale for the debts of the appellee, as a homestead. The facts relating to it seem to be as follows:

The appellee owned a farm somewhere near Leitchfield, but there is no claim to any homestead right in the farm. He owned a dwelling house, in Leitchfield, situated upon a lot upon which he lived, and he, also owned the lot in controversy, which was separated from the lot upon which the dwelling house stood by an alley. He purchased both lots at the same time for a home, and from the evidence there is no question but that he used both lots as a homestead. Upon the lot, in controversy, were situated his cow barn and cistern, and he used it continuously in connection with the other lot upon which the dwelling house stood. When he purchased the house and two lots he did so at the sum of four thousand dollars. He executed a mortgage upon his farm and borrowed fifteen hundred dollars, which he applied to the payment of the purchase money debts upon the house and two lots. At the time the attachment was levied the purchase money lien on the house and two lots amounted to about twenty-one hundred dollars, and they were further encumbered by other liens, which are not specifically described. The farm was otherwise encumbered, and in all he owed between six and seven thousand dollars. In March, previous to the levy of the attachment, he sold his farm for four thousand dollars, and the lot upon which his dwelling house was situated for twenty-five hundred dollars, all of which was applied to the payment of his debts. The debts were extinguished substan-

tially, except a lien for five hundred dollars, for purchase money upon the lot in controversy. He remained as a tenant of his vendee in his dwelling house for some time, and, as he states, with the intention to erect a dwelling upon the lot in controversy and to remove to it, and had made plans for the building of the house, but was prevented from carrying out his plans by the levy of the attachment. After giving up his dwelling house to his vendee, he removed to a dwelling nearby, which he occupied as a tenant for the time being. It has frequently been held that one may acquire and be entitled to hold as a homestead and exempt from coercive sale for debt, two parcels of land, where they do not exceed in value one thousand dollars, although separated from each other, if the one upon which he does not live is used, in connection with the other and as a homestead. Gaar-Scott & Co. v. Reesor, 28 R. 1308; Bennett v. Baird, 81 Ky. 554; Travis v. Lucas, 14 Bush 395; Slaughter, etc. v. Carn, 15 R. 429; Ross v. Sweeney, etc., 12 R. 861; Jarboe v. Colvin, 4 Bush 70; Miles v. Hall, 12 Bush 105; Frazier v. Potter, 150 Ky. 127; Donaldson v. Richart, 22 R. 1268; Nichols v. Sennitt, 5 R. 199; Redmon v. Citizens Bank of Paris, 19 R. 137. It has, likewise, been held, that it is not indispensable to the holding of a homestead, as an exemption against coercive sale . for debt, that there should be a dwelling house upon the exempted property. Mason v. Columbia Finance & Trust Co., 99 Ky. 117; Bennett v. Baird, supra; Derrickson v. Gillispie, 17 R. 892. In Tohermes v. Biser, etc., 14 R. 440, it was said:

"It has been held by this court that a debtor may select any part of a tract of land occupied by him as a homestead, which he desires to be exempted from coercive sale, even though the dwelling house be on the part not so selected and retained for a homestead. And a debtor may even voluntarily sell off that part of his land upon which the dwelling house is situated, retaining a homestead right in the remainder, though there be at the time no dwelling house upon it."

Section 1703, Kentucky Statutes, provides, that before a sale under execution, attachment or judgment of land occupied as a homestead, the officer, whose duty it is to conduct the sale, shall cause such a part of the land as the defendant may select, which shall not exceed in value one thousand dollars, be set apart to the debtor as a homestead. The lot in controversy was a part of the homestead of the appellee. If the purchase

money and other liens upon the land had been enforced by a judgment and a sale directed, the appellee would have had the right to have designated which portion of his homestead, not exceeding in value the sum of one thousand dollars, and which was not necessary to be sold in payment of the lien debts upon it, to be set apart to him as exempt, and as was said in Morrow, etc., v. Bailey, 109 Ky. 359, that when the debtor did, himself, what the court would have done, the result must be the same. In Torbitt v. Castleman, 26 R. 196, Castleman had purchased a house and lot and occupied it as a homestead and then sold it, and received so much cash and a lien note for nineteen hundred dollars, with the stipulation, that out of this note should be paid a lien debt already against the property for twelve hundred dollars. After the payment of the prior lien, the remainder of the proceeds amounted to less than one thousand dollars, and this was held to be exempt under the homestead laws, the court saying:

"If the bank (which was the prior lien holder) had enforced its lien and the property had been sold for two thousand dollars, there can be no doubt that under section 1705, Kentucky Statutes, the appellee would have been entitled to have had the surplus, after paying the lien debt to the bank, exempt."

A similar principle was upheld in Ross v. Sweeney, etc., *supra;* Hooper v. Arnett, 16 R. 145, and other adjudications of this court. It has furthermore been oftentimes held, that a temporary removal from the premises with the intention of returning does not forfeit the homestead exemption. Hansford v. Holdam, 14 Bush 210. The proof shows that the lot in controversy does not exceed in value the sum of one thousand dollars, and with the payment of the purchase money lien upon it only one-half of that sum would remain. If the house and two lots had been sold by coercive sale, and it had been necessary to sell all of it and a surplus of proceeds had remained after the payment of the debts, the appellee would have been entitled to an exemption in such surplus to the extent of one thousand dollars. He, however, chose himself to sell the homestead in satisfaction of his debts, retaining the lot in controversy, which he might have done if a coercive sale had been had, and hence the lot is exempt as against all debts, which were not created until after his purchase of the homestead. The judgment of the court below holding that the lot was exempt from coercive sale for the debt sued on was in ac-

cordance with the rules herein announced, and the judgment so holding is affirmed.

It is therefore ordered that upon the original appeal the judgment appealed from is affirmed, but it is reversed upon the cross-appeal and remanded for proceedings consistent with this opinion. The appellants should be permitted to amend their pleadings, so as to secure the relief to which they are entitled, if any, in accordance with the principles announced in this opinion.