## Vansant's Executrix v. Gardner's Executrix.

## Mayo's Administrator v. Same.

(Decided June 2, 1931.)

(As modified on Denial of Rehearing October 20, 1931.)

HAGER, PRICHARD & MALIN and R. C. VANSANT for appellants.

ROBERT H. WINN, JOHN H. GARDNER and W. R. PRATER for appellee.

OPINION OF THE COURT BY STANLEY, COMMISSIONER—Reversing.

These appeals involve the question of liability for contribution by the estate of one of the sureties on the bond of the late Barksdale Hamlett, as superintendent of public instruction of Kentucky.

On January 1, 1912, Hamlett's bond for $25,000 was executed with J. C. C. Mayo, R. H. Vansant, and D. W. Gardner, as his sureties. In a suit filed by the commonwealth in June, 1916, judgment was rendered against the principal for $64,711 and against the sureties for $25,000, but it was reversed in part on appeal. Vansant, etc., v. Commonwealth, 189 Ky. 1, 224 S. W. 367. Thereafter in April, 1921, a judgment was rendered against the sureties for $17,017.27, which with interest was paid May 23, 1921, by the personal representative of Mayo, who died May 11, 1914, and of Vansant, who died May 12, 1921. Judge D. W. Gardner, the other surety, died March 25, 1925. Hamlett died in the year 1919. Governor McCreary, who approved the bond, is also dead.

In March, 1926, these suits were instituted by Mayo's administrator and Vansant's executor against Gardner's executrix, each to recover $2,855.30 with interest, the two sums aggregating one-third of the judgment rendered against the three sureties, all of which had been paid by two of them. The cases were tried together, and on the verdict of the jury judgments were rendered for the defendant in both cases.

The defense to the suits was based upon limitations and laches; also upon the ground that Gardner had signed the bond at the instance and request of his cosureties, without any intention on the part of any of them that he should become liable in fact; that he did so under an agreement that they would hold him harmless against loss.

Mayo and Vansant were men of considerable wealth, while Gardner was by comparison a man of limited financial means. The three were intimate personal and political friends, and Gardner had been materially assisted by the others in his campaigns for circuit judge and perhaps in other ways. The two had been very active and much interested in the election of 1911, at which Hamlett and his associates on the ticket were elected; but the evidence tends to show that Gardner was not so interested. He had but a slight acquaintance with Hamlett, and there was no reason why he should have become obligated on the bond, and there is nothing to indicate that Hamlett asked it. Indeed, it is not shown that he directly asked the others to do so. Three men of unquestionable sincerity and integrity, who are occupying or have occupied high official positions in the state, differ one from the other as to the place the bond was signed

and the immediate circumstances. That is suggestive of the uncertainty of evidence based on memory. They testify, respectively, to statements made by the parties to the effect that Mayo and Vansant did not regard Gardner as being able to pay any money for which the sureties might become liable on the bond. To one of them Judge Gardner stated he was "backing up Mayo and Vansant." To another, who asked why he was signing it, he jokingly replied that he wanted to get into good company. In the Vansant case evidence was admitted also of statements made by Judge Gardner to Vansant to the effect that he did not consider himself responsible for the payment of any part of the bond; that even if he was responsible he was unable to pay anything; and that Vansant responded that he need not worry as it would be up to Mayo and himself to take care of it. These statements can hardly be considered as evidence of any agreement that he should never become liable, and certainly were not recognition by Vansant to the effect that Gardner should be discharged or was not liable.

Although Mayo and Vansant employed counsel to defend the suit of the commonwealth on the bond, Judge Gardner actively participated in the defense and wrote that he could see no reason why a proposed form of the judgment against the three of them should not be so entered.

Gardner was bound by the judgment rendered against him and his cosureties. Section 4665, Statutes. But it was not conclusive as between themselves, because their relative liability was not put in issue. 3 C. J. 932-1032. Cf. Fritts v. Kirchdorfer, 136 Ky. 643, 124 S. W. 882; Consolidated Coach Corporation v. Burge, 231 Ky. 713, 22 S. W. (2d) 108. It is, however, prima facie evidence of joint and equal liability. 13 C. J. 835; 6 R. C. L. 1062. That there will be contribution among sureties is a legal presumption and implication.

Though there are some authorities to the contrary, the sounder and better rule is that, in the absence of something more, the mere request by one of another to join him as cosurety can only be construed to mean that he was to assume the same responsibility and become bound on equal terms. 21 R. C. L., 1149; 50 C. J. 288. A different rule would, of course, apply if there was an unequivocal agreement to the contrary, or unless the cosurety signed the bond for the benefit of the one requesting him to do so. Daniel v. Ballard, 2 Dana, 296.

Undoubtedly, sureties may contract among themselves as to their proportionate liability. Rogers v. Hazel, 147 Ky. 333, 144 S. W. 49. Their respective rights and obligations may be shown by parol evidence. But the instrument constitutes cogent evidence of equal responsibility, and in order to overcome it the oral evidence should be clear and convincing. Walker v. Walker, 228 Ky. 357, 15 S. W. (2d) 298.

There was no competent evidence tending in the slightest degree to absolve Judge Gardner of liability in the Mayo suit. The evidence in the Vansant case at most was of an expression of opinion that Gardner would not have to pay anything and of a promise of indemnity for which there was no consideration. 21 R. C. L. 1137. It falls far short of overcoming the presumption of equality of liability under the commitment of the three men. Whatever may have been the influence or intent actuating Judge Gardner—serious or not—he signed the bond and became responsible for subsequent events.

Because of this failure of proof, the court erred in submitting to the jury the question as to an agreement between sureties to hold Judge Gardner harmless.

■ The plaintiffs respectively averred that Hamlett was ''wholly insolvent'' at the time of filing the suit on the bond and remained so until his death, and that he left no estate out of which the judgment rendered could be collected in whole or in part. For lack of information and on belief the allegations were denied. The plaintiffs introduced some evidence tending to show Hamlett's insolvency, and that issue was likewise submitted to the jury. It is argued on this appeal that as no agreement absolving Gardner's estate from liability was proven, appellants were entitled to a directed verdict, since the evidence on the question of Hamlett's insolvency was sufficient and uncontradicted, and, going a step further, that this was really a false issue, as it is not incumbent upon a cosurety seeking contribution to prove insolvency of the principal and inability to collect from him.

The conclusion reached and announced in respect to the submission of the issue as to the agreement between the sureties, requiring as it does the reversal of the judgment, obviates the necessity of considering the sufficiency of the evidence on the issue of insolvency. But since there may be another trial of the case, a consideration of the legal proposition suggested is demanded.

In many jurisdictions it is the rule that a right of action for contribution from a cosurety on a bond accrues upon payment of more than one's proportion of joint liability, and to maintain the action it is not necessary to prove insolvency of the principal or that payment from him cannot be obtained. 21 R. C. L. 1145; annotations, 29 A. L. R. 273. A few courts, including this one, have established a contrary rule. This lack of harmony has arisen out of the fact that the remedy of the cosurety may be either in chancery or by an action at law. Brandt on Suretyship, sec. 315; Stearns on Suretyship, sec. 262. In an action at law the weight of the authority is that insolvency of the principal need not be shown, but it has repeatedly been held that such condition must be shown in a suit in equity on the ground that the right of contribution does not rest on contract but on natural justice, and this element is wanting when the principal is solvent. Brandt on Suretyship, sec. 316; Daniel v. Ballard, 2 Dana, 296. In our jurisprudence no difference has been recognized in the application of the rule, and whether its origin be sound or not, we are committed to the doctrine that the right of contribution is contingent and dependent upon pleading and proof of insolvency of the principal or an inability to collect from him. Pearson v. Duckham, 13 Ky. (3 Litt.) 385; Morrison v. Poyntz, 37 Ky. (7 Dana) 307, 32 Am. Dec. 92; Crow v. Murphy, 51 Ky. (12 B. Mon.) 444; Hall v. Gleason, 158 Ky. 789, 166 S. W. 608, 609; Kelly v. Ramsey, 176 Ky. 584, 195 S. W. 1111, and cases cited therein.

■ A question is also raised as to the competency of the evidence of Judge John F. Hager as to the insolvency of Hamlett. Undoubtedly the surest evidence and better practice to show insolvency is the introduction of an execution with a nulla bona return. Francis v. Gant, 80 Ky. 196. But issuance of an execution in a suit against a principal or use of the summary proceeding provided by the Statutes with such a return is not prerequisite to the successful maintenance of a suit for contribution. It is simply a matter of proving a fact by any competent evidence. Kelly v. Ramsey, supra.

No strict or comprehensive rule of evidence to this end can be laid down. We find no better statement as to the character of such evidence than that given in Abbott's Trial Evidence (3d Ed.) vol. 2, p. 1641, namely:

"On the question of solvency or pecuniary ability, facts which are the usual concomitants

324

or consequences or pecuniary ability, or the contrary, are competent; thus, a judgment and execution, and its return unsatisfied; dishonor of a check drawn by a merchant upon his banker; the small amount a merchant had on deposit in bank at the time of his purchases; the fact of having absconded and having been proceeded against as an absconding debtor, without sufficient assets to pay in full, and the like, are competent; and such evidence is received more or less freely according as direct evidence is wanting or accessible. The taking of the poor debtor's oath, or a discharge from imprisonment for insolvency, if not in a court of record, may be proved by parol; and irregularity in the certificate is immaterial.''

The authorities are in conflict on the broad statement that insolvency of an individual may be proved by reputation. Wigmore, sec. 1623, and Greenleaf, sec. 140b, say it may be so established. Abbott, p. 1641, and 10 R. C. L. 962, say the contrary. Chamberlayne, sec. 2748, says it is a debatable question and such evidence is to be regarded as untrustworthy. But it is pretty well agreed that one conversant with the facts may give his opinion respecting the financial condition of another. 11 R. C. L. 616; Jones on Evidence, sec. 1254. In Abbott's Trial Evidence, p. 1643, it is laid down that:

''A witness who states the facts on which his opinion is based, and his means of knowledge may state his opinion. Without the facts his opinion is incompetent. To qualify the witness for this purpose, he must show some knowledge as to the existence and ownership of property. Mere inference from style of living, etc., is not competent. It is no objection that the opinion was based partly on what was said by others, acquainted with the person, at the place and at and before the time.''

In Commonwealth v. Thompson, 33 Ky. (3 Dana) 301, the principal question on the trial of an issue involving the legality of a sheriff's conduct in taking certain security on a replevin bond was the solvency of the sureties. A witness stated that they owned at its date property exceeding in value the amount to be secured by the bond and that he ''considered them good.'' This was

held competent; but the court, denominating the evidence as

> "far from being conclusive, or even very persuasive, against the deduction from the official return on the execution on the bond," stated, "nevertheless it should, after a full and fair trial, be deemed sufficient to sustain the verdict for the defendants."

As gauged by these rules of admissibility, we deem all of Judge Hager's statements respecting the investigations he made and conclusion reached as to Hamlett's insolvency to be competent, although it may be classified as was the kindred evidence in the Thompson case, supra. Its probative value was, of course, addressed to the jury.

■ As indicated by the dates given, at the time these suits for contribution were filed more than seven years had elapsed since the default of the principal and the liability under the covenants of the bond had been incurred, but a little less than five years since Gardner's cosureties had satisfied the judgment. The defendant relied upon the provisions of section 2548 of the Statutes to the effect that a surety shall be discharged from all liability under any judgment or decree after the lapse of seven years without any execution issuing thereon or prosecution in good faith for collection thereof. As presently shown Gardner's liability to his cosureties did not accrue until they had paid the judgment.

It was pleaded that no execution had been issued on the judgment rendered in April, 1921, by other parties against Hamlett or Gardner, as was authorized by section 4666 of the Statutes, and that such failure operated to discharge Gardner's estate from liability. That law entitled them to an assignment of the judgment on demand, but did not per se make the assignment. The summary proceedings authorized by that section for the enforcement of the right of contribution is a cumulative remedy and is no bar to an independent action on the contract which the law implies between the sureties on a bond. Kellar v. Williams, 10 Bush, 216; Sanders v. Herndon, 122 Ky. 760, 93 S. W. 14, 29 Ky. Law Rep. 322, 5 L. R. A. (N. S.) 1072, 121 Am. St. Rep. 493; Weidemann v. Crawford, 149 Ky. 202, 147 S. W. 951. The action is specifically authorized by section 4665 of the Statutes.

Since it is on a promise implied by law, or an equitable principle demanding distribution of a common burden equally among those who are able to bear it—a principle of justice recognized by both the civil and common law—the five-year statute of limitation (section 2515) applies. Joyce v. Joyce, 64 Ky. (1 Bush) 474. Limitations as between the sureties began to run upon the satisfaction of the judgment or common debt by any of them, for the right to enforce contribution does not otherwise arise or become complete. 13 C. J. 833; 21 R. C. L. 1134. That right accrued less than five years before the institution of this suit in March, 1926; consequently, no statute bars the action.

In comparative modern times courts of law have assumed jurisdiction over actions between cosureties for contribution by raising an implied promise to pay one another. It is suggested in Stearns on Suretyship, sec. 262, the practical distinction between the two forms of action is to be found in the application of the statutes of limitation. As already noted, in this jurisdiction the action is a statutory right (section 4665), although the equitable right of substitution is not affected by the statute. Keller v. Williams, supra. In these cases, the defendant resisted recovery by invoking also the equitable doctrine of laches—a principle, like limitations of actions, dictated by experience and found to be a salutary policy. It is not, like limitation, a mere matter of time, although that it one of its important elements. There must not only be delay, but delay which works a disadvantage to another. That is elementary. The disadvantage the defendant claims to have suffered through the delay of the plaintiffs in bringing their suits is obscuration or loss of evidence through the death of all the principal actors in the transaction.

Equity may refuse to enforce a claim by the application of the doctrine of laches even though it be not barred by the statute of limitations. Glock's Adm'r v. Weikel, 149 Ky. 170, 147 S. W. 897; Culton v. Asher, 149 Ky. 659, 149 S. W. 946; Klineline v. Head, 205 Ky. 644, 266 S. W. 370. It is a principle applied where an equitable right is involved—where its enforcement lies within the breast or on the conscience of the chancellor. But in an action at law the statute fixes the limit and establishes the principle to be applied. So the defense of laches is not available where the statute does not bar it. Barrett

v. Mutual Life Ins. Co., 85 S. W. 749, 27 Ky. Law Rep. 586; Citizens' Trust & Guaranty Co. v. Peebles Paving Brick Co., 174 Ky. 439, 192 S. W. 508; Commercial Sec. Co. v. Orcher, 179 Ky. 842, 201 S. W. 479. Concerning cases where there is concurrent jurisdiction in equity and at law we may quote this excerpt from Lexington L., F. & M. Ins. Co. v. Page and Richardson, 56 Ky. (17 B. Mon.) 412, at page 453, 66 Am. Dec. 165:

> "The remedy therefore being complete at law, there could be no necessity for a resort to a court of equity. But conceding it to be a case of concurrent jurisdiction—which is all that can be contended for —and that a remedy might be had in either court, then the well settled doctrine would apply, that in such cases, when the remedy at law has been barred by the statute, the limitation will be inflexibly applied in a court of equity, precisely as it operates at law, with the single exception that it will not be allowed to operate in cases of fraud or mistake until they have, or should have been, discovered."

See also Clay's Adm'x v. Clay, 70 Ky. (7 Bush.) 95.

Whether inflexibility is to be ascribed to the rule of applying the statute in *all* cases of mixed or concurrent jurisdiction involving the enforcement of a claim not barred by it—such as the instant one—does not appear to have been hitherto definitely declared by this court and need not here be determined. But certainly the decision must be influenced by the spirit of the law of limitations.

The plaintiffs in these suits cannot be said to have slept on their rights, for they acted seasonably as measured by the statutory requirement. If death of witnesses should be held sufficient to estop or bar the enforcement of a demand within the statutory period, the result would be disastrous and destructive to the administration of justice. Clearly, the appellants were not guilty of culpable laches, and the defendant's pleas were properly denied.

Some other questions are raised respecting the instructions and effect of certain evidence, but an expression of opinion as to them is reserved.

The judgments are reversed for consistent proceedings.