## Paine v. Levy.

(Decided March 8, 1911.)

### Appeal from Jefferson Circuit Court (Second Chancery Division.)

1. Equity Actions—Judgments—Conflicting Evidence—Chancellor's Judgment Approved.—While in this court judgment in an equity case will be given according to the weight of the evidence and the truth as it shall appear from the whole record, yet where the proof is conflicting, and, on the whole case there is doubt, the chancellor's judgment will not be disturbed.

2. Usurious Interest—Limitation in Recovering.—The statute of limitations does not begin to run in an equity action, to recover usurious interest. until the usury has been paid.

3. Same—Renewal of Note.—The renewal of a note tainted with usury is not a payment of the usury, and the statute of limitations as to the usury does not begin to run at the completion of the novation. So long as the usury can be traced it may be extracted.

4. Same—Recovery of Usury Paid.—Although the law permits the recovery of usury paid, or that the claim sued on be purged of usury, it does not forfeit the money of the usurer. He can not be deprived of his principal and legal interest, and these the judgment gives him

SAMUEL AVRITT for appellant.

STANLEY R. WOLF for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Appellee sued appellant in the court below upon a note of $603, executed March 13, 1907, payable one day after date and bearing six per cent. interest from date. The note was secured by a mortgage of the same date upon personal property. Judgment was asked by ap-

pellee for the amount of the note and interest and also
for the enforcement of the mortgage lien and sale of the
mortgaged property for its payment. Appellant's an-
swer, as amended, admitted the execution of the note and
mortgage, but alleged that the note contained usury in
a large amount; that it had been fully paid; and that if
appellant were allowed credit for the usury and other
sums he paid appellee thereon, the note had been over-
paid by $217. The answer was made a counterclaim and
judgment prayed therein against appellee for that
amount.

Appellee by reply controverted the affirmative mat-
ter of the answer and counterclaim, and pleaded the stat-
ute of limitation, as to the usury sought to be recovered
by appellant.

Appellant filed a rejoinder traversing the plea of
the statute of limitations and other affirmative matter
of the reply, which completed the issues. The circuit
court allowed appellant credit for $196 of usury found
to be included in the note, and gave appellee judgment
against him for $407 with interest from March 13, 1907:
also for the enforcement of the mortgage lien and a sale
of the mortgaged property, or enough thereof, to pay the
debt and costs of the action. From that judgment this
appeal is prosecuted.

It appears from appellant's answer and counterclaim,
and also from his deposition found in the record, that he
began borrowing money from appellee as far back as
1902. The first amount he borrowed was $100 which he
claims to have paid back within the year; the other
amounts borrowed from time to time down to 1907, were
as small as $50 and never greater than $100. On all
sums borrowed he claims to have paid interest from time
to time in advance, at the rate of six per cent. per month.
If correct in this statement it is manifest that the inter-
est paid was largely in excess of the legal rate; but appel-
lant was unable to remember and exhibited no statement
which showed the amount of interest thus paid, or when
paid, except that he produced a receipt for the payment
of the first $100 he borrowed of appellee, and another
for $6 interest he claimed to have paid on the first loan.
The receipt shows that it was executed for interest paid,
but does not indicate upon what loan it was paid, at what
rate, or the period covered by it. According to his tes-
timony he borrowed of appellee from 1902 down to 1907,

including the $100 he got when the note sued on was executed, $650 and during the same time, without being able to fix dates or amounts, he paid appellee on these loans totaling $650, various sums aggregating $885; yet after making all these alleged over payments, he on March 13, 1907, borrowed another $100 of appellee, and then gave him his note for $603 and the chattel mortgage to secure its payment, with the understanding, as he admits, that $503 of the $603 note was what appellee claimed he owed him as the balance due upon the principal and interest of the former loans.

It is not alleged in the answer and counterclaim that appellant is lacking in mental cpacity, that he was overreached in this transaction, or that he executed the note and mortgage under duress; and it is beyond belief that in order to borrow another $100 of appellee who was, as he now claims, then owing him more than that sum for over payments on the former loans, appellant should have executed to appellee the note and mortgage for $603.

Appellant testified that he left with his son a statement showing the various sums he had borrowed of appellee and when borrowed, and also the several payments he had made him as well as the date of each; but he did not procure or file the statement with his deposition, although the son lives in or near Louisville and could have been reached in a few minutes time.

It will thus be seen that the testimony furnished by appellant's deposition as to the usury and other payments made by him to appellee is too vague and inconsistent with reason to satisfactorily support the defense of payment interposed by his answer and counterclaim. His deposition constituted his entire proof in the case and the burden was upon him to show that the debt for which the note sued on was executed, had been paid.

It also devolved upon him to show what amount of usury, if any, is contained in the note. While his deposition fails to show in any definite sense the amount of such usury, it does sufficiently establish the fact that payments of usury were made by him on the loans obtained of appellee, and it is evident that some of the usury that accrued and was computed on the loans was carried into the note sued on, but it is impossible from the record before us to determine the precise amount; it can only be approximately arrived at.

We find from appellee's deposition, which constituted his only proof, that he loaned appellant various sums aggregating $650 including the $100 he let him have, March 13, 1907, when the note and mortgage were executed; and that appellant at different times made him payments amounting altogether to $314. These loans and payments appear to have been taken from appellee's books which were not introduced in evidence, but were willingly submitted to the inspection of appellant's counsel before he cross-examined appellee; and it is patent that appellant was ignorant of and unable to state the entire amount of money he borrowed of appellee until after the latter's books had been examined by his attorney. After getting the necessary information from appellee's books appellant seemed to no longer disagree with him as to the amounts borrowed, but still disagreed with him as to the rate of interest charged and payments made and was unsupported in his statements as to these matters, while appellee's testimony in regard thereto contradicted that of appellant and was corroborated by the entries appearing in his (appellee's) books. We are of opinion, therefore, that the circuit court did not err in reaching the conclusion that $314 constituted the aggregate of all payments made by appellant to appellee upon the amounts borrowed of him. But assuming this to be true, it is still apparent that appellant's indebtedness to appellee at the time he executed the note and mortgage, was not exclusive of usurious interest, as much as $603, the amount contained in the note. There was,therefore, some amount of usurious interest included in the note and this fact appellee, in giving his deposition, did not deny. The amount of usury included in the note was fixed by the circuit court at $196. In other words that court was of opinion that appellant's true indebtedness to appellee at the time of the execution of the note and mortgage, including the $100 then borrowed, was $407 instead of $603; hence, the latter was given judgment for $407 with interest from March 13, 1907, it being admitted by appellant that nothing was paid by him after the execution of the note.

The data furnished by the record is not sufficiently definite to enable us to demonstrate by the necessary calculation the precise amount of usury contained in the note, but we assume that the circuit court arrived at the amount for which judgment was given by computing,

according to the legal mathematical rule, interest at six per cent. upon the sum or sums borrowed by appellant, from the dates, respectively, of such borrowing, and allowing him credit for all payments as of the dates they were made, respectively; the record does not, however, disclose the particular method adopted for the calculation, but we will not, in the absence of a showing to the contrary, conjecture that the calculation was incorrectly made.  While in this court judgment in a case in equity will be given according to the weight of the evidence and the truth as it shall appear from the whole record; yet, where the proof is conflicting and on the whole case there is doubt, the chancellor's judgment will not be disturbed.  Quigley v. Beam's Admr, et al., 137 Ky., 325; Flowers, et al. v. Moorman & Hill, 27 R., 728; Campbell v Trosper, 108 Ky., 602; Bank of Campbellsbsurg v. Minor, 30 R., 496; Akers v. Akers, 31 R., 36.

Appellee's plea of the statute of limitation was properly disregarded by the circuit court.  If, as appellant testified, the $100 he borrowed of appellee in 1902, was, together with the usurious interest it bore, repaid that year and its payment closed the transaction, it would seem that as to such usury as he paid on that $100, the statute would bar a recovery. We gather from the evidence as a whole that from the time of the first borrowing in 1902, which was the $100 referred to, down to the execution of the note and mortgage, March 13, 1907, appellant was continually in debt to appellee for money borrowed of him, paying him or being charged by him, usurious interest at some rate thereon, and that the principal and legal interest of none of the sums borrowed by appellant of appellee was ever fully paid before he would procure of the latter another loan which, when made, would be merged with what appellant was owing on former loans into a new obligation, thereby making each obligation, as created, contain some part of the usurious interest with which he had been charged and a part of which he had paid from the beginning, and in this way a considerable part of such usury was carried into the note of March 13, 1907.

The statute of limitations does not begin to run in an action to recover usurious interest until the usury has been paid.  Fitzpatrick v. Apperson's Exrs, 79 Ky., 272; Roberts v. Thomas, 4 R., 227; Anderson v. Trimble, 18 R., 507; Burnside v. Mealer, 26 R., 79.  Notwithstanding

the statute requiring suits to recover usury to be brought within a year from the time it was paid, while any part of an obligation upon which usury has been paid remains undischarged, the obligor may have it purged of the usury although paid more than a year before suit. And this would be so, though the obligation may have been repeatedly renewed or one or more of such renewals made to include, with the original debt, another or others owing by the obligor to the holder. In brief, the renewal of a note tainted with usury is not a payment of the usury, and the statute of limitation as to the usury does not begin to run at completion of the novation. So long as the usury can be traced it may be extracted. Rudd v. Planters Bank, 78 Ky., 513; Nall v. Farmers Bank, 5 R., 122.

The reason for this rule is that payments, though made by a borrower as usury, will, at his election, be applied first upon the legal interest then due, and then upon the principal, so that, if he elects, no usury can be regarded as having been paid until the satisfaction of the principal and legal interest. Neal v. Rouse, 93 Ky., 151; Bank of Russellville v. Coke, 20 R., 291; Crenshaw v. Crenshaw, 24 R., 600; Crenshaw v. Duff's Exor, 24 R., 718; Day's Admr v. Davis, 20 R., 869.

Although the law permits the recovery of usury paid, or that the claim sued on be purged of usury, it does not forfeit the money of the usurer. He cannot be deprived of his principal and legal interest, and these the judgment gives him.

There being no error apparent in the judgment of the circuit court, it is affirmed.