## Holmes et al. v. Clark.
(Decided June 24, 1938.)

350

HANNAH, VAN SANT & McKENZIE and A. W. MANN for appellants.

WOODS, STEWART & NICKEL for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

In 1922, the appellants and defendants below, M. H. Holmes, P. C. Holmes, Kate I. Holmes and Nora Holmes (now Nora Moran), who were brothers and sister, embarked as a partnership in the business of dealers in new and secondhand automobiles, which was conducted in the city of Ashland, Kentucky, under the firm name of "Holmes Motor Company." They financed their notes and contracts taken by them from purchasers of automobiles through the plaintiff corporation then operating in Ashland as "Ashland Finance Company" of which the present appellee, Raleigh Clark, was president. About two or three years after the Holmes Motor Company began business it made a large purchase of Willys-Knight and Willys-Overland automobiles (about 30) which were shipped from the factory to defendants at Ashland, and for the cost price of which they executed their note or notes. The seller of that purchase of automobiles assigned and transferred defendants' obligation or obligations to a bank in Toledo, Ohio, who carried the indebtedness for some time by accepting renewals from defendants; but eventually it notified them that at the due date of the then current note or notes payment would be demanded. No current obligations existed between defendants and the Ashland Finance Company for the latter to aid or assist the former in refinancing any such indebtedness; nevertheless, defendants, about thirty days before the Toledo bank debt became due, applied to the finance company, upon receiving the notification referred to, to assist them in taking care of it when its due date arrived.

It is the contention of defendants that the finance

company promised absolutely to refinance for them that debt, while the finance company and its officers deny an absolute promise to do so, but that it then intimated that it might do so under acceptable conditions and which would be investigated. At any rate about three days before the due date of the Toledo bank debt defendants again approached the finance company and called its attention to the matter, when they were confronted with the proposition from it that it would refinance the debt for defendants, provided they would settle a debt—amounting to about $3,000—that the finance company claimed defendants owed it on prior transactions, and about which the parties had been disputing and controverting for some considerable time past. Defendants claimed to be surprised at the suggestion and took it under advisement for some days and finally concluded to and did accept it by executing their series of notes to the finance company aggregating $2,900. The Toledo bank debt was then arranged by the finance company and defendants continued to operate their business until 1928 when they wound it up. They renewed the notes for the aggregate amount of $2,900 from time to time and paid part of it and the interest thereon, reducing the principal to the sum of $1,091.28, which was the balance due at the time this action was filed by plaintiff, the finance company, in the Boyd circuit court against defendants on August 2, 1932, and in which the judgment appealed from was obtained.

Defendants in their answer to the action pleaded (1) no consideration; (2) duress practiced upon them by the finance company to procure the execution of the notes; (3) failure to list the notes for taxes; (4) laches in not filing the action sooner; but no plea of statutory limitations was interposed, since none existed. There was also a counterclaim contained in the answer, whereby defendants sought to recover from plaintiff the payments they had made on the note or notes, as well as interest thereon, upon the same grounds that they interposed as a defense to the recovery of the remainder of the indebtedness. A reply filed by plaintiff put in issue all of the material facts pleaded in the answer. The case was then transferred to equity and referred to the court's commissioner to take proof and report on the issues made by the pleadings. Before that report was made the finance company went into

voluntary liquidation and sold and transferred all of its assets to its president, Raleigh Clark. After that purchase by him he filed an intervening pleading manifesting the fact of his purchase, and asked to be made a plaintiff in the cause, which was done, and he adopted the pleadings of his assignor, the finance company. When that was done defendants filed an amended answer asserting the additional defense (5) of champerty. The commissioner rejected all of the defenses interposed and recommended a judgment in favor of plaintiff for the amount sued for. Exceptions were filed to that report but they were overruled and the report adopted by the court rendering judgment for the amount sued for—from which defendants prosecute this appeal.

The judgment was rendered on November 11, 1936. Execution was thereafter issued thereon and defendants then superseded the judgment in the trial court, but the record was not filed in this court twenty days before its April 1937 term, but which should have been done in order to perfect the appeal granted by the trial court, as is expressly provided by section 738 of the Civil Code of Practice. Upon the filing of the transcript in this court at a later date, plaintiff (appellee) moved that the appeal be dismissed with 10 per cent damages on the supersedeas bond executed in the trial court; whereupon a copy of the judgment was filed in this court with a prayer for an appeal and summons was issued for defendants and later served on them. The two efforts to take the appeal were then on motion consolidated. The motion to dismiss the first appeal with damages was then overruled; but which was later followed by another motion of appellee to reconsider the overruling order, which was done, and the motion to dismiss was passed to a hearing of the merits of the cause, and that preliminary question will be first disposed of.

The responses and replies thereto filed in this court on the motion to dismiss revealed what we conclude was a clear bona fide misunderstanding between counsel for the respective parties. Two of the counsel for defendants, in resisting the motion to dismiss the appeal, filed their affidavits in which they stated that one of the counsel for appellee—either before or following the completion of the transcript by the circuit court clerk preparatory to taking the appeal—requested them to

permit appellee's counsel to brief the case from the record as made by the clerk before it was sent to the clerk of this court, and, in substance, that no advantage would be taken of the delay, if any, that might be produced thereby; that after appellants' counsel briefed the case and furnished a copy of it to counsel for appellee, they then turned the record over to appellee's counsel that they might brief the case for their client and that the delay incident thereto prevented them from filing the record within the time prescribed by the section of the Code, supra. Counsel for appellee (only one), while admitting conversations with opposing counsel with reference to the briefing of the case, states positively that there was no agreement whereby the time for filing the appeal might expire, and the appeal later taken with their consent, or under any agreement of waiver. The only conversation, according to that attorney, was to the effect that appellee's counsel desired the record turned over to them after appellants' counsel obtained it from the circuit court clerk and briefed the cause for their client, when they (appellee's counsel) would complete their brief, but in ample time for the record to be filed within the time prescribed by the Code, and that it was never the intention of counsel for appellee to agree to any waiver of the time within which the record should be filed in this court.

In arguing the motion to dismiss counsel for appellee cite a number of our former opinions wherein similar motions were sustained but in the absence of the complication, supra, injected into this case, and there is no doubt about the correctness of that ruling. Counsel for both sides are highly honorable men and most respected members of the profession. We can not conceive that either of them would intentionally misrepresent the facts as they understood them. For such reasons we are forced to the conclusion that there was a bona fide mistake between counsel and that it would be improper to apply the strict rule of practice to the facts so developed. So believing, we have concluded to overrule the motion to dismiss the appeal granted by the trial court, and especially so, since we have also concluded that the judgment should be affirmed upon its merits for reasons hereinafter pointed out. We will, therefore, now proceed to a brief consideration of the defenses, supra, determining them in the order named.

1. The defense of no consideration is based upon the contention that defendants did not owe the finance company but a small part of the amount for which they executed their notes to it at the time it refinanced the Toledo bank debt. The same contention also furnishes the ground for the counterclaim interposed, by which recovery of the amount paid on that indebtedness was sought. That contention involved—not only many transactions between the parties, but likewise a course of dealing that they had each observed throughout their business relations. At the time that the asserted claim of the finance company was so settled it was uncompromisingly asserting its validity; while defendants were denying only a part of it—which, however, was its greater part. It arose by the failure of the finance company to collect from defendants' customers some notes and other contract obligations they had executed to defendants, and which the latter had transferred to the finance company, and whose automobiles had either been destroyed by fire or had been stolen and the owners declined to make payment. It was the insistence of defendants that the notes of the customers contained a charge for insurance against such losses, and that the finance company, either obtained insurance or neglected to do so, but, in either event it should sustain such losses if it failed to either insure, or to collect the insurance if taken out.

It would serve no useful purpose to enumerate the controversial issues growing out of such contentions, since there was testimony sustaining that made by both parties and the commissioner found in favor of plaintiff, which was affirmed by the trial court on exceptions. Moreover, if the premium for such insurance was contained in the notes taken by defendants from their customers it might be argued, with plausibility, that it was defendants' duty to take out insurance for their protection, and to not require the finance company, as assignee of the notes, to take that precaution. But however that may be, we do not find the record in condition to authorize our interference with the judgment of the court on that issue. But, independently of the strictly correct determination of the rights of the parties growing out of such contentions, there was in fact a controversy about which there existed grounds for dispute, and which was compromised and settled by defendants executing their notes to the fi-

nance company. They renewed them from time to time and payments were made, until more than one-half of the aggregate amount was paid. Such renewals extended over a period of something like eight years before any complaint was made concerning the legality of the compromise—all of which furnishes ample grounds for the application of the doctrine of waiver of any such defense to an action on the original notes, if any existed—to say nothing about the sufficiency of the settlement of disputed questions as furnishing a consideration for a compromise.

But it is said that the payments on the indebtedness represented by the notes after they were executed were not made by defendants in person, but were taken out of the amount paid by plaintiff for customers' notes, later purchased by the finance company, and the deduction applied to defendants' indebtedness represented by the notes. If, however, that contention be true it would not alter the legal status of the fact of payment, since it was necessarily done with the knowledge of defendants and they acquiesced in and consented to it, and they can not now be permitted to take advantage of the fact that such payments were so made. We, therefore, conclude that the plea of no consideration was properly disallowed by the trial court.

2. Earnest counsel—in presenting the defense of duress in procuring the notes sued on—cite a number of cases wherein such a defense was allowed; but the wide gulf separating the facts of those cases from those contained in this record renders the holdings in them of no avail here. We have already seen that there was a consideration for the execution of the notes, and the finance company was in no way responsible for the impecunious situation of defendants when it was applied to for the purpose of refinancing their indebtedness to the Toledo bank. The appellee (finance company) was under no obligation to render that accommodation, and if it had absolutely promised to do so—on defendants' first approach to it for that purpose—then there would have been no enforceable contract whereby it could have been compelled to discharge such nudum pactum promise when the time arrived for it to be done. Moreover, it informed defendants, some three days or more in advance of the time when the Toledo bank debt would have to be met, of the conditions upon which it would lend its aid and assistance in caring

for it. After discussion of the proposition by defendants, among themselves, they consented to execute their notes in satisfaction of the prior disputed amount for which they were executed. Not the slightest element of legal duress is made to appear from such facts, and for which reason we do not deem it essential to enter into a discussion of what is—or what is not—legal duress so as to avoid a contract superinduced by it. The amount that the finance company was eventually called upon to pay in rendering the assistance that it promised was only about $11,000, and it was not made to appear that defendants were absolutely unable to otherwise raise that amount and meet the situation after the finance company had refused to come to its rescue—except upon its submitted terms—all of which robs the situation of the essential elements of legal duress, even if the finance company had in any wise been responsible for defendants' crippled financial condition but which it was not. Such facts render the case essentially different from the compromises of tort claims—involved in most of the cases cited by appellants' counsel in support of this contention. We, therefore, conclude that there is no merit in the duress defense.

3. Before judgment was rendered the notes were retroactively listed for taxes from the time they were executed, and the taxes paid thereon, and which, under the express provisions of section 4019a-13 of our present Statutes, had the effect of successfully meeting this defense. See Miller v. Chemical Company, 251 Ky. 30, 64 S. W. (2d) 437, and Markwell v. Kahlkoff, 258 Ky. 231, 79 S. W. (2d) 984, the latter case holding that the defense will be met by listing for and paying taxes only on the last renewal note of any part of the indebtedness sued on, although prior notes—representing the same indebtedness—were not listed nor taxes paid thereon. This defense, therefore, is also without merit.

4. In an effort to sustain the plea of laches counsel for defendants cite the domestic cases of Predestinarian Baptist Church v. United Baptist Church, 139 Ky. 110, 129 S. W. 546 and Vansant's Ex'x v. Garner's Ex'x, 240 Ky. 318, 42 S. W. (2d) 300. In the first one limitations had run on the cause of action, but it had not been relied on in the trial court, and we came to the rescue of defendants and applied the doctrine of laches, because the facts developed all of the elements

necessary therefor—the principal ones of which are (a) delay in asserting the right, and (b) detrimental changes in conditions because thereof whereby the party so damaged would be without adequate remedy, unless he could shelter under the doctrine of laches. It (the doctrine) was never intended to take the place of and be substituted for the established limitation period for the assertion of a right. Neither was it intended to curtail the established period of limitation. Its office was and is in the nature of an estoppel, whereby a litigant may not delay action to such a period that his antagonist in the meantime has materially altered his position and would sustain irreparable loss if the right thereafter is upheld and enforced.

The essential element—distinguishing laches from established periods of limitation—is totally absent in this case—i. e., a detrimental change in position of defendants because of delay on the part of the finance company in filing the action. The cited Vansant Case supports our definition of laches, as do also the cases of Richardson's Adm'r v. Morgan, 233 Ky. 540, 26 S .W. (2d) 32; Trimble v. Kentucky River Coal Corporation, 235 Ky. 301, 31 S. W. (2d) 367; Webb v. Tri-State Fair & Racing Association, 238 Ky. 87, 36 S. W. (2d) 839; Kennedy v. Denny, 237 Ky. 649, 36 S. W. (2d) 41; Heyburn Building Company v. Highland Motor Transfer Company, 245 Ky. 514, 53 S. W. (2d) 944; Prudential Insurance Company v. Bridgman, 256 Ky. 575, 76 S. W. (2d) 639, and Ratliff v. Sinberg, 258 Ky. 203, 79 S. W. (2d) 717. Clearly, this defense is also without merit.

5. In briefly discussing the defense of champerty it should first be stated that the provisions of section 210 of our Statutes has no application whatever, since it relates exclusively to sales and conveyances of real estate in the adverse possession of another who claims the absolute title thereto. No such question is involved in this case, and that section, therefore, has no bearing. If, therefore, the defense has any application whatever to the facts of this case it must emanate from the preceding section (209) of the same Statutes, relating exclusively to contracts or agreements in consideration of officious intermeddling services rendered by a stranger to the subject matter involved, in consideration of sharing in the proceeds of the recovery. We clearly have here no such case, since Raleigh Clark,

who became the beneficial owner of the debt sued on by assignment to him, thereby became the exclusive owner of all interests in the matter of litigation. He was not thereafter in the attitude of an intermeddler whose only incentive was to share an agreed portion of the recovery and who neither possessed, nor proposed to possess, any title interest in the subject matter of the litigation. He had bought all of the assets of the finance company—that which was disputed as well as that which was undisputed. No one was in possession of the subject matter in litigation, analogous to an adverse occupant of real estate. We have been unable to find any case—nor have we been cited to any—wherein the defense of champerty or maintenance was applicable to such a state of facts as is here presented. Besides, the Ashland Finance Company continued to be a party plaintiff in the cause throughout the litigation and up to the time of the rendition of the judgment. We are clearly of the opinion that this defense is also unsustainable, and that the trial court properly disallowed it. See the text in 11 C. J. 236, section 11, and the text in 10 Am. Jur. 562, section 217, and the case of Adkins' Adm'r v. Ferguson, 11 Ky. Law Rep. 95. The texts referred to assert the modern rule to be "that the bona fide purchaser or assignee of a mere right of action is not guilty of champerty or maintenance," unless a local statute expressly forbids it. The Adkins Case was rendered by our old Superior Court, but on facts identical with those in this case. The Corpus Juris citation is fortified by cases from the United States Courts, and from the courts of Alabama, Illinois, Indiana, Iowa, Massachusetts, Minnesota, New Jersey, New York, Rhode Island, South Carolina, Tennessee, Texas, Vermont, Washington, Wisconsin and many cases from English courts.

Wherefore, for the reasons stated, the judgment is affirmed.