## Goff et al. v. Charles.

Oct. 11, 1940.

R. Monroe Fields, Judge.

Stratton & Stephenson for appellants.

Roscoe Vanover and W. K. Steele for appellee.

OPINION OF THE COURT BY SIMS, COMMISSIONER—Reversing.

This is the second appeal of this case. The opinion on the first appeal is reported in 277 Ky. 801, 127 S. W. (2d) 849, showing the judgment was reversed on a question of procedure. No opinion was expressed as to the merits of the case, or what discretion the chancellor should exercise in the matter of permitting the filing of the amended answer. We will not repeat the facts narrated in the former opinion and will give only such additional facts as may be necessary to a proper consideration of the case.

Upon a return of the case to the circuit court the amended answer was ordered to be filed, to which appellee formerly objected, but as it was not argued here that the chancellor abused his discretion in permitting the pleading to be filed, we will not discuss the question. The proof conclusively shows the notes sued on were listed for taxation during the pendency of this litigation and such a listing complies with Section 4019a-13, Kentucky Statutes, which provides the failure to list a note or bond for taxation may be pleaded as a defense to an action on same. Miller v. Tennessee Chemical Co., 251 Ky. 30, 64 S. W. (2d) 437; Holmes v. Clark, 274 Ky. 349, 118 S. W. (2d) 758.

This case narrows down to a question of fact, to-

wit: Did Felon Goff after borrowing $500 from Thomps Charles on August 12, 1924, obtain an additional loan from him of $300, or did certain payments made to Charles by and for Goff reduce the $500 indebtedness to $300, which was evidenced by a note Goff executed to Charles on January 12, 1933, for $300 due twelve months after date? As to the note transactions only two witnesses testified besides Mr. Goff and Mrs. Charles, and the competency of the latter two witnesses was waived when no written exceptions were filed to their depositions and the ruling of the chancellor obtained thereon, as required by Sections 586 to 589 of the Civil Code of Practice; Chestnut v. Allen, 282 Ky. 703, 139 S. W. (2d) 729. The two disinterested witnesses were Walter Hatcher, vice-president of the First National Bank of Pikeville, and A. E. Sowards.

Hatcher testified that Charles was a customer of his bank and that several of these $500 notes were left by Charles at the bank to be renewed. In a number of instances the bank forwarded the $500 note that was renewed along with the renewal note to Charles instead of sending to Goff the note that had been taken up by the renewal. In Charles' papers were found a $500 note dated August 12, 1926, due twelve months after date; a $500 note dated August 12, 1927, due twelve months after date; and a $300 note dated January 12, 1933, due twelve months after date; all three of which were payable to Charles and were signed by Felon A. Goff and endorsed by his father, James A. Goff, as guarantor. The $500 note date August 12, 1926, was mailed by the bank to Charles on January 18, 1934, and the renewal thereof dated August 12, 1927, was forwarded to Charles on August 13, 1930.

Charles died in April, 1934, and his widow, the sole devisee under his will, brought this suit in August, 1934. The two $500 notes and the $300 note having been found among Charles' papers after his death, the presumption is that these notes had not been paid in the absence of proof to the contrary. Ray's Ex'r v. Bridges, 247 Ky. 459, 57 S. W. (2d) 492, and authorities therein cited. It is not denied that the $500 note dated August 12, 1926, was satisfied by the renewal note dated August 12, 1927. Four checks were given by or for Goff to Charles respectively on September 26, 1928, for $82; on November 9, 1929, for $175; on July 3, 1931, for $25; and on Au-

gust 8, 1931, for $10. Mr. Hatcher testified all of these four checks aggregating $292 went to Charles' credit in his bank. It will be noted all of these payments were made after the execution of the $500 note sued on and before the $300 note was executed. Disregarding the interest, these payments lack only $8 of paying the $500 note down to $300, and the interest from the last payment August 8, 1931, to January 12, 1933 (the date of the $300 note), would amount to less than $25. Hatcher further testified that Charles' checking account from July 23, 1927, to August 21, 1933, never exceeded $215, and that Charles did not give a check on his savings account until October 21, 1933. If Charles loaned Goff $300 on January 12, 1933, it is not shown in this record where the money came from. Certainly, it did not come out of either of his bank accounts.

We do not regard Soward's testimony of any importance as it evidently relates to the first of the four payments made by Goff. Mrs. Charles knew practically nothing about the matter in controversy except she found the two notes sued on among her husband's papers after his death. She was present when Goff paid $100 on the $300 note March 15, 1934, but that is not in controversy. After the death, in February, 1934, of James A. Goff, the indorser on these notes, something was said by Charles about Goff securing the balance of $200 due on the $300 note. It would be most unusual for Charles to ask that this balance of $200 be secured and leave the $500 note unsecured. While it is true Charles did not accept the mortgage Goff had prepared in March, 1934, to secure this $200 balance, and that he left this debt unsecured, yet this fact does not make it less significant that Charles was talking of taking security on the $300 note and neglecting the $500 note, if it had not been satisfied. It is unreasonable to believe that Charles would have the $500 note dated August 12, 1927, in his possession from August 13, 1930, until his death in April, 1934, without collecting interest thereon if it were not paid down to $300 and satisfied by the $300 note dated January 12, 1933. This latter note was credited with interest to January 12, 1934, and by a payment of $100 made March 15, 1934. Certainly, Charles would not have neglected collecting interest on this $500 note for almost four years and have credited the $300 note as just indicated unless the $500 note was

paid down to $300 and that balance was represented by the note Goff executed to him on January 12, 1933. Experience teaches us that men will not allow a debtor to make payments on a small note of recent date while they hold another note against the same debtor of almost twice the size with interest unpaid for almost four years.

It is contended by appellee that as the $500 note executed on August 12, 1927, was payable at the First National Bank of Williamson, W. Va., while the $300 note was payable at the Pikeville National Bank, this shows the latter transaction had no connection with the former. But at the time Goff executed the $300 note he lived in Williamson and it would not have been unusual for him to have used one of the blank notes of the First National Bank of that city in executing the note for the balance he owed Charles. It is customary for banks to keep blank notes for the use of their customers, and such notes are usually payable at the bank having them printed and people using these notes give but scant attention to the place of payment.

Goff testified he borrowed money from Charles only on the one occasion when Charles loaned him $500 on August 12, 1924, and that he never attempted thereafter to obtain a loan from him. Appellee introduced a letter from Goff to Charles written January 26, 1925, or 1926 (the 6 being written over the 5, or vice versa), inquiring as to the date of his note, and on this letter was a postscript asking Charles to advise him if he had any more surplus money to lend. Appellee argues this letter is a material contradiction of Goff and shows he was attempting to obtain a second loan. We do not so regard it. This letter was written twelve or fourteen years before Goff testified and was of such a casual nature that it is not to be calculated to impress itself on his mind. An inquiry of a man whether he has any surplus money to lend is a far step from obtaining a loan or even an attempt to do so. It is not shown whether or not Goff was making this inquiry for himself or for some business acquaintance and we cannot regard such an inquiry as an attempt to borrow money.

When all these facts are put together and considered as a whole, they convince us that Charles never loaned Goff $300 on January 12, 1933. They further convince us that the $300 note Goff executed to Charles

on that date represented the balance he owed Charles on the $500 renewal note executed to him on August 12, 1927.

Appellee insists that we should follow the decision of the special commissioner and the chancellor who confirmed his report, especially as this case was heard by the special commissioner before the former appeal and when the case was returned the commissioner adopted his previous report and again the chancellor confirmed same. It is true we give some weight to a chancellor's finding of fact, yet we reserve the right to examine a record for ourselves and if we are convinced that the evidence does not support the chancellor's judgment we do not hesitate to reverse it, Ratliff v. Ratliff, 283 Ky. 418, 141 S. W. (2d) 566.

Appellant's pleadings seek to purge this debt of usury, and this he may do so long as any part of the original debt remains unpaid and he is an obligor on the note, Wren v. Peoples' Bank, 237 Ky. 398, 35 S. W. (2d) 566, and cases therein cited. The rule is that usury payments will be applied at the debtor's election first upon the legal interest and then upon the principal. Paine v. Levy, 142 Ky. 619, 134 S. W. 1160; Taulbee v. Hargis, 173 Ky. 433, 191 S. W. 320, Ann. Cas. 1918A, 762. Goff's answer sets out innumerable small amounts he alleges should be credited on the $500 renewal notes as a result of his paying usurious interest thereon, and he further pleaded many small payments made by him on such notes. But his testimony failed to support the allegations of his answer and on cross-examination he admits these credits were erroneous, or that he did not know anything about them. With the record in this shape it is impossible to determine what rate of interest he paid on the $500 note and the renewals thereof, and not being certain he paid usurious interest thereon, we do not feel justified in purging it of usury. However, the $300 note shows beyond question he paid 8 per cent interest on it the first year. On this note Goff paid $20 on January 17, $4 on February 17, and $100 on March 15, 1934. As we calculate the interest on this $300 note at 6 percent and give credits for these payments on their respective dates, it leaves Goff owing $197.01 on March 16, 1934, and the chancellor is directed to enter judgment for Mrs. Charles in that sum.

The judgment is reversed.