STATE MUT. LIFE ASSUR. CO. OF WORCESTER, MASS., v. HEINE.

No. 9631.

Circuit Court of Appeals, Sixth Circuit.

April 7, 1944.

742

R. Lee Blackwell, of Louisville, Ky. (Wm. Marshall Bullitt, R. Lee Blackwell, and Bullitt & Middleton, all of Louisville, Ky., on the brief), for appellant.

L. H. Hilton and Lawrence S. Leopold, both of Louisville, Ky., for appellee.

Before HICKS, HAMILTON, and MARTIN, Circuit Judges.

HAMILTON, Circuit Judge.

This is a diversity of citizenship action commenced by appellant, the State Mutual Life Assurance Company of Worcester, Massachusetts, for a declaration of rights on an insurance policy of which appellee L. Allen Heine is beneficiary. Appellee counterclaimed, asserting he was entitled to the benefits of the policy. The trial court sustained his counterclaim and dismissed·the petition.

On September 22, 1925, appellant on appellee's written application issued to him on his life a five year term policy in the principal sum of $7,000. On September 22, 1926, pursuant to the provisions of the term policy, on the written application of appellee, appellant issued to him a whole life policy for the principal sum of $7,000 and a supplementary disability contract. The annual premium on the life policy was $240.80 and on the disability policy $17.57, all of which has been paid. Under the supplementary contract, if insured, while no premium was in default, furnished due proof that before reaching the age of sixty years, because of accident or disease, he had become wholly, continuously and permanently unable to pursue any gainful occupation and would be unable for the balance of his life to perform any mental or manual work, or engage in any business for compensation or profit and said disability or its cause was sustained or contracted after September 22, 1926, the company would waive the payment of premiums becoming due under the policy and disability contract and pay the insured a monthly income of one per cent of the face amount of the policy excluding paid-up additions, if any. The first payment on the contract was to be made when the proof of claim was accepted and like payments each month while the insured's disability continued prior to the maturity of the policy. The

policy was incontestable except for the nonpayment of premiums after it had been in force for one year. The policies were issued on a certificate of good health given to the insured by a physician selected by the insurer.

Until December 15, 1926, the insured in apparent good health was actively engaged in the general advertising business in Louisville, Kentucky. He was a devotee of golf and other sports which required physical activity.

On June 13, 1926, appellee, while riding in an automobile with his wife, suffered an accident in which his wife was seriously injured. Insured sustained no visible injury but thereafter appeared in a highly nervous condition. His wife recovered and insured continued his business activities and sports diversions until December 15, 1926, on which date he entered a hospital at Louisville, Kentucky, for a physical examination.

In 1903, insured contracted a luetic infection but took no treatment until 1921 at which time he discovered the disease was active. During the year 1925 insured had trouble with his arches and consulted a physician who advised him that the earlier infection was again active and the physician repeated the treatments, again arresting the infection. In the spring of 1926, although insured felt physically unfit, he did not consult a physician until December 1926, when he was advised that the luetic infection was progressive. This examination which took place at the hospital, showed that insured was in the second stage of locomotor ataxia and his physician stated that his condition was such as could have been caused from the luetic infection and that its insidious activity had probably produced the first and second stages of the disease. A part of the treatment given to insured by his physician consisted of a puncture in the spinal column and while this treatment increased insured's physical disablement, it prevented the further destruction of the brain cells which is said to be one of the effects of the ravages of this disease. Insured left the hospital on December 21, 1926, unable to walk without assistance and shortly thereafter became totally physically disabled and suffered slight mental impairment, and until 1936 remained unemployed and unoccupied in any mental or physical endeavor.

In this year insured created a syndicated pictorial strip for publication in newspapers entitled "You Be the Judge." His idea consisted of pictorially outlining with a word description, reported jury cases, leaving the reader to guess the verdict and in the following script disclosing the actual verdict. The material for the strip was prepared by insured's wife from reported cases found in law libraries. Her abstracts were given to the insured and he employed an artist to make the illustrations and to assist him in writing the accompanying descriptive words. Insured, without paying his wife any compensation, realized from the sale of the strip, the following net sums:

| 1937 | $2,007.83 |
| 1938 | 2,900.00 |
| 1939 | 2,542.00 |
| 1940 | 2,212.00 |
| 1941 | 1,033.33 |
| 1942 | 959.00 |

On July 19, 1927, appellee notified appellant that he claimed disability benefits under the policy and on August 16, 1927, furnished proof thereof. On August 24, 1927, appellant rejected appellee's claim on the ground, among others, that his disability and the cause thereof were sustained by him before the effective date of the policy. On November 22, 1930, appellee commenced in the Jefferson Circuit Court for Jefferson County, Kentucky, two separate actions against appellant, one to recover $70 per month income provided under the contract for the period between August 27, 1929, to and including December 1930, aggregating $2,730 with interest thereon from the respective due date of each monthly installment, and the other to recover premiums of $817.04 paid on the policies during the years 1927 to and including 1930, together with interest. Appellant caused these actions to be removed to the United States District Court for the Western District of Kentucky on the ground of diversity of citizenship. Appellee made motions to remand, which were overruled February 18, 1931, and the two actions were assigned for trial on March 26, 1931. On March 9, 1931, appellee with leave of Court, dismissed the actions without prejudice and on March 24, 1931, filed new actions in the Jefferson Circuit Court seeking to recover therein only the accrued monthly disability benefits. Pleadings were completed and the action assigned to trial for January 12, 1932. On appellee's motion the case was removed from the trial docket and placed on the call docket and no further steps were

taken therein until August 25, 1942, when it was dismissed without prejudice on appellee's motion. On April 21, 1941, appellee commenced another action against appellant in the Circuit Court of Floyd County, Indiana, for the recovery of disability benefits and premiums paid on these policies from September 1, 1927, to and including April 1, 1942. On May 11, 1942, appellant removed the action to the United States District Court for the Southern District of Indiana on the ground of diversity of citizenship and it was pending there at the time the present action was filed September 29, 1942. Appellant here, plaintiff below, seeks an injunction to prevent the further prosecution of the action in the Indiana District Court.

The trial court in the present suit awarded appellee a judgment in the aggregate amount of $25,334.71, which includes disability benefits from September 1, 1927, to December 1, 1942, and premiums paid on the policies within the same period, together with interest on each of these items.

Appellant urges that appellee has abandoned his claim for benefits on account of disability and that he is now estopped from asserting any such claim because of his acquiescence in appellant's rejection of the claim for fourteen years and eight months. It also urges that appellee's disability commenced before the policies were issued and further that appellee has not suffered physical disability to the extent insured against in the contract.

Appellant is a mutual company and is required under the laws of Massachusetts and the State of Kentucky annually to ascertain and distribute its divisible surplus among all of its policyholders. Appellant insists that if it must now pay appellee's claim, the result will be to disarrange its business and prejudice the interests of other policyholders, and that the appellee has, by reason of his delay in prosecuting his claim, received more than his equitable share of appellant's policyholders' surplus. Appellant therefore argues that these circumstances make applicable the rule of law that appellee has voluntarily abandoned his claim to benefits and the return of premiums under the contract.

■ The term abandonment symbolizes a concept which is sui generis in the law. It has acquired a technical meaning and is not to be confused with the doctrine of laches or estoppel. It means when applied to choses in action an absolute relinquishment or renunciation of the right. It has no application unless there is a total desertion by an owner without being pressed by necessity, duty or utility to himself, but simply because he no longer desires to possess the thing and willingly abandons it to whoever wishes to possess it. Sandy River Coal Company v. Champion Bridge Company et al., 243 Ky. 424, 48 S.W.2d 1062; Helvering v. Jones, 8 Cir., 120 F.2d 828.

■ The acts of appellee on which appellant bases its contention of abandonment lend no support to that conclusion. During the period of delay, appellee had an action pending in a court of competent jurisdiction which was instituted within a reasonable time after his claim was rejected. It is true that two of these actions were dismissed by appellee without prejudice. This is a common practice in the courts of the Commonwealth of Kentucky [Ky. Civil Code of Practice, Sec. 371 (1)] and the practice is also recognized in the federal courts. Rule 41(a), Federal Rules of Civil Procedure, Title 28 U.S.C.A. following section 723c. Appellee's conduct was the antithesis of abandonment.

Appellant's contention is really based on the doctrine of laches amounting to estoppel growing out of delay of appellee in commencing his action and delay in its prosecution. All of appellee's actions were commenced within the period of limitation provided under the laws of the Commonwealth. Kentucky Revised Statutes, Sec. 413.090.

■■ The courts have concurrent jurisdiction in equity and at law, and equitable defenses are available to a law action, but laches is a defense at law only when a plaintiff is seeking to enforce some equitable right, and where enforcement lies within the conscience of the Chancellor. Unless equitable relief is sought by the plaintiff, the statute of limitation fixes the limit and establishes the applicable principle. Vansant's Executrix v. Gardner's Executrix, 240 Ky. 318, 42 S.W.2d 300; Holmes v. Clark, 274 Ky. 349, 118 S.W.2d 758; Dwiggins v. Howard, 247 Ky. 746, 57 S.W.2d 649; Poynter v. Smith, 290 Ky. 169, 160 S.W.2d 380; Hospelhorn v. Circle City Coal Company, 6 Cir., 117 F.2d 166.

■ Since appellee seeks no equitable relief and his claim is enforceable at law, delay in commencement or prosecution of his action short of the statute of limitations

is no defense. Involuntary dismissal on motion of a defendant for failure to prosecute an action is available in the courts of Kentucky but dismissal on such grounds is in the court's discretion and usually requires affirmative action on the part of defendant.

It is true appellee's action pended in the Jefferson Circuit Court for approximately ten years after it was at issue. However, there is no direct evidence of appellee's intent to abandon and there was no motion by appellant to dismiss. Under these circumstances, even if appellee was guilty of laches in failing to prosecute the action, appellant waived this defense by its failure to move for dismissal. Combs v. Wallace, 3 Ky. Law Rep. 384; Ætna Life Insurance Co. of Hartford, Conn. v. Wells, 254 Ky. 650, 72 S.W.2d 33; City of Louisville v. Sonne, 148 Ky. 394, 146 S.W. 739; Carnegie National Bank v. City of Wolf Point, 9 Cir., 110 F.2d 569.

Appellant insists that the case of Northwestern Mutual Life Insurance Company v. Lowery's Adm'x, 20 S.W. 607, 14 Ky.L. Rep. 600, decides the specific question involved in this case and that it is conclusive on us. In that case a mutual life insurance company issued its policy in consideration of annual premiums paid in advance in cash or by a premium note. Before insured's death she defaulted in premium payments. The claim on the policy matured in May 1878 and insured's administratrix commenced the action on the policy in October 1888, within the applicable period of limitation. The action was based upon the theory that when the proportionate amount of the annual distribution of profits to policyholders was allocated to the policy in question, it would have been in full force and effect at the time of the insured's death. The plaintiff sought an accounting from the company of its surplus divisible among its policyholders. The court there said that the insurance company being a mutual one and required to distribute its surplus savings in cash to his policyholders, it was necessary for it to have a reasonably certain and reliable basis upon which to calculate and determine the amount due them and that the delay in presenting the claim was such as to raise a reasonable presumption the claim had been waived or abandoned. The court also said that such delay would result in deranging the business of the company, endanger its existence and prejudice the interests of the other policyholders.

Plaintiff was undertaking to enforce an equitable interest in a common fund arising out of a contract. While the court did not say so expressly, there is a clear implication from the opinion that its decision was based upon the ground that insured's interest in the fund had already been distributed to other policyholders and that she was setting up a conflicting claim to property in the hands of third persons.

Since the plaintiff in the Lowery case was seeking equitable relief, which the court was authorized to grant on equitable grounds, the defense of laches was available to defendant. Changes had occurred in the subject matter of the transaction in suit and in the relative position of the parties and they could not be placed in statu quo. The enforcement of plaintiff's right there would have worked inequity.

In the case at bar appellee is seeking no equitable relief and while the payment of the judgment in suit will affect appellant's surplus available for distribution to its policyholders, this is incidental to the relief which appellee seeks. As we view it, under the Kentucky decisions, the Lowery case has no application to the suit at bar.

Appellant urges that the policy in question limited liability to disability incurred by the insured from a disabling disease which had its cause after the date of the policy.

The contract limited the liability of the insurer to such disability, or the cause thereof, as was sustained or contracted after the date of the policy. Viewing the contract as a whole, the loss insured against was a disability arising from an accident or disease. The ultimate facts show that the "cause" (giving that word its ordinary meaning) of insured's disability occurred after the date of the policy. Locomotor ataxia is a successor of luetic infection, the latter being the precursor of the former. It is generally recognized by neurologists that only persons who are victims of acquired or hereditary syphilis are subject to locomotor ataxia, but not all syphilitics have this disease. While locomotor ataxia is an offspring of syphilis, it is a distinct disease. According to the testimony of the doctors, locomotor ataxia has three different stages; (1) The pre-ataxic, (2) the ataxic, (3) complete paralysis. The first stage may be prolonged without substantial disablement

and the patient may die from intercurrent complications without being ataxic. The second stage has symptoms entirely distinct from the first and its peculiar characteristics are difficulty in walking in the dark and a swaying of the body when the eyes are shut. It is clear from the evidence that at the time the policy 'in question was issued, insured was suffering from the first stage of the disease, but that he had sustained no disablement therefrom. The second, or ataxic, stage was reached after the policy was issued with the resulting disablement.

The word "cause" has many meanings and shades of meanings. Philosophically speaking, the sum of all the antecedents of any event constitutes its cause. As a rule, however, each separate antecedent of an event is considered as a cause for that event and no other. Ordinarily, that condition is usually termed the cause whose share in the matter is most conspicuous and is the most immediately preceding and proximate to the event. In other words, that which brings a thing to be; that condition which determines the final result.

The insurer did not insure appellant against a disease, but against disablement from a disease. The immediate cause of insured's disability was his affliction of locomotor ataxia in its second stage. It is true that such stage would not have been reached but for the existence of the first stage of the disease, which latter stage could have continued throughout assured's lifetime without disablement.

Appellant insists that in order to carry out the intention of the parties in entering into the contract the court should change the disjunctive particle "or" appearing in the phrase, "that such disability or the cause thereof was sustained or contracted after the date hereof" to the conjunctive particle "and". These words are not ordinarily convertible and a court is never justified in substituting one for the other, unless it is clear from the context that one has been mistakenly used for the other. The particle "and" expresses the relationship of addition, connection and signifies that something is to follow in addition to that which precedes. The word "or" is often used in an explanatory sense and may imply substitution, discretion or choice. As the word is used in the context of the contract in question, it could be construed as explanatory or as a choice.

The rule prevails in Kentucky that in the interpretation of all insurance policies, the language must be construed most favorably toward insured and if the language is susceptible to two constructions, one of which will enforce payment of the benefits and the other excuse the company, the former should always be adopted. Continental Beneficial Association v. Holt, 167 Ky. 806, 181 S.W. 648; Mutual Benefit Life Insurance Company v. Dunn, 106 Ky. 591, 51 S.W. 20; Continental Casualty Company v. Linn, 226 Ky. 328, 10 S.W.2d 1079; Fowler v. Brotherhood of Railroad Trainmen, 253 Ky. 786, 70 S.W.2d 669; Mutual Life Insurance Company v. Smith, 257 Ky. 709, 79 S.W.2d 28. Construing the contract in the light of the Kentucky decisions, appellant's liability was fixed if appellee's disability occurred after the issuance of the policy although the antecedent cause thereof may have occurred before the issuance of the policy.

The criterion of liability stated in the policy is that insured must be so disabled from accident or disease that he is unable to perform any work, mental or manual, or to engage in any business for compensation or profit. Appellant says because insured has suffered no mental impairment and also because he was able to devise and circulate profitably the strip "You Be the Judge" that his disability does not come within the terms of the policy.

The rule prevails in Kentucky that the total disability contemplated by a sickness or accident insurance policy does not mean, as its literal construction would require, a state of absolute helplessness, but where the disability is such as to render insured unable to perform all the substantial and material acts necessary to the prosecution of his business and occupation in a customary and usual manner, total disability is present. John Hancock Mutual Life Insurance Company v. Cave, 240 Ky. 56, 40 S.W.2d 1004, 79 A.L.R. 848.

Total disability as contemplated in insurance policies, is a relative matter, and depends chiefly on the peculiar circumstances of each case. It turns upon the occupation, employment and capabilities of the person insured. The parties to insurance policies with such clauses usually contemplate that the insured would be totally disabled within the meaning of the policy, if he was wholly incapacitated from conducting his ordinary employment or

such other employment as he might fairly be expected to follow in view of his station in life and his circumstances and capabilities. Benefit Association of Railway Employees v. Secrest, 239 Ky. 400, 39 S.W.2d 682. In appellee's present condition, he can perform no manual labor whatsoever. He is unable to walk unassisted, in fact he can engage in no activity requiring any kind of physical exertion. As a result of appellee's disability, he abandoned his former business and has been unable to resume it.

Recovery is not precluded under the provisions of the present policy because insured is able to perform sporadic mental tasks or attend to inconsequential details incident to the preparation and circulation of his syndicated newspaper strip. Ohio National Life Insurance Company v. Stagner, 231 Ky. 275, 21 S.W.2d 289; National Life & Accident Insurance Company v. Bradley, 245 Ky. 311, 53 S.W.2d 701.

Judgment affirmed.